**Auday MAKI and Salwa Atwan,
Plaintiffs–Appellants,**

v.

**William LAAKKO, Beverly Laakko and
Liisa Laakko, Defendants–
Appellees.**

No. 94–1994.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 16, 1995.

Decided July 2, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied Aug. 12, 1996.

Stephen J. Safranek (argued and briefed), University of Detroit School of Law, Detroit, MI, for Plaintiffs–Appellants.

Brian D. Figot (argued), Troy, MI, for William and Beverly Laakko.

William Laakko, Birmingham, MI, pro se.

Brian D. Figot (argued), Troy, MI, Thomas M. Fallucca (briefed), Robert P. Ufer & Assoc., Bloomfield Hills, MI, for Liisa Laakko.

Before: BROWN, BOGGS, and NORRIS, Circuit Judges.

BOGGS, Circuit Judge.

Former tenants appeal a grant of summary judgment in favor of their landlords in this housing discrimination suit. We agree with the district court that there is no evidence that the landlords discriminated against or otherwise harmed the tenants, and we affirm the district court's decision to grant summary judgment on the federal claims in this suit.

## I

The Maki family brought suit against their landlords, the Laakko family, because they believe their treatment by the Laakkos violated federal laws forbidding discrimination against tenants on the basis of family status and national origin. They also raised a number of pendant state claims concerning landlord-tenant law, security deposits, and state tort law.

The Maki family is of Iraqi origin and consists of two adults, Dr. Auday Maki and Salwa Atwan (husband and wife), and their three children. The Makis moved to Michigan in September 1990, because Dr. Maki had accepted a research position at Wayne State University. The Maki family, apparently impressed by the schools and overall quality of the neighborhood, rented the lower apartment in a two-unit apartment building at 1258 Maryland in the city of Grosse Pointe Park, a suburb of Detroit.

The Makis signed a one-year lease, beginning on September 1, 1990, that expressly provided for a monthly rent of $565, with a $40 discount if the rent was paid by the third of each month. The lease also stated that after the lease expired, holding-over would be permitted on a month-to-month basis.

When their one-year lease expired at the end of August 1991, the Makis did in fact hold over as month-to-month tenants until they ultimately vacated the premises on July 18, 1993. The lease provided for termination by either party after the first year, upon 30 days notice without any obligation, and the Makis agreed at a deposition that they understood this provision.

The Makis were still living in the apartment as month-to-month tenants when William and Beverly Laakko purchased the building in June 1992. The Laakkos offered the Makis a one-year lease, with no increase in rent, for the period of June 1, 1992 through May 31, 1993. Because Dr. Maki's position at Wayne State was scheduled to end in August 1992, the Makis were unsure of their finances and need for the apartment beyond August. Accordingly, they declined the Laakkos' offer of a one-year lease, and sought to continue as tenants in the same apartment on a month-to-month basis at the original rental rate. This relationship appears to have gone on without incident until the spring of 1993. At no time did the Makis ever ask for a lease, on any terms.

Both the financial and personal aspects of this arrangement began to change in May 1993, when the Laakkos proposed a rent increase, and the relationship ended in July when the Makis moved out. Salwa Atwan says Mrs. Laakko abruptly demanded $100 more in rent in a phone conversation (initiated by Atwan) on May 31. Atwan asked for time to move, and Laakko said "We don't want you to move, just to pay more rent." On June 1, the Laakkos sent a letter raising the monthly rent, effective July 1, from $565(–40), to $625(–50). The effective increase was $50, if rent was always paid on time. The next communications between the sides involved their lawyers. Maki contacted a lawyer, Prof. Steven Safranek. The Laakkos say, and Safranek doesn't deny, that he called them around June 7. The Laakkos called Michael Drew, their lawyer. The Makis' response to this request and the subsequent negotiations between the parties are the most serious area of contention between the parties and are the key to resolving this appeal.

The Laakkos' version of events is that the Makis refused the rent increase, negotiated over a precise time for their departure, and departed on July 18, after the Laakkos sent a letter on June 28 giving the Makis until August 1 to find another apartment and quit the premises. Whether this letter constituted an eviction notice or was simply confirmation of when the Makis must move, given their refusal to agree to the rental increase, is a critical facet of this dispute.

The Makis' interpretation of events is that the Laakkos evicted them by sending the letter of June 28. According to this version of events, the Makis were content to stay on at the apartment and pay the additional rent, on a month-to-month basis, but were forced out by the Laakkos by their letter to quit of June 28.

In conjunction with this argument, the Makis also contend that they were forced to look for another apartment because the Laakkos harassed them. The plaintiffs point to a handful of instances where the Laakkos warned the Makis about certain activities. The warnings appear to have begun on or around June 1, 1993. Since the Laakkos' daughter, defendant Liisa Laakko, moved into the upper apartment on this same day, the Makis claim that the alleged harassment was related to her presence, and that the Laakkos changed their approach to the Makis because they did not want them living in proximity to their daughter. As proof of this alleged harassment, the Makis refer to a letter from the Laakkos asking that they remove some boards from a chestnut tree in the yard, calling their attention to marks in the hallway carpet, and asking the Makis to refrain from placing garbage and other items in the hallway. As additional proof, the Makis point to notes left by Liisa Laakko instructing the Makis to refrain from taking mail addressed to "resident and/or owner."

Against this backdrop, the Makis and Laakkos communicated back and forth through their respective attorneys regarding when or if the Makis would end their tenancy. Whether the June 28 letter was an eviction letter depends upon the nature of these conversations between counsel.

The Makis characterize these exchanges as establishing that the June 28 letter was a notice of eviction, rather than a confirmation that they would voluntarily move by August 1 because they did not want to pay more rent.

The Laakkos argue that these exchanges show that the Makis voluntarily decided to move because they did not want to pay the increased rent. According to the Laakkos, supported by the affidavit of their lawyer, Michael Drew, the sequence of events was as follows. The Laakkos indicated that the rent would increase by $50, prompting the Makis to contact attorney Stephen Safranek. Attorney Safranek called Drew. In this call, Safranek threatened a federal suit over the Laakkos' decision to increase the rent by $50. Drew and Safranek, however, then came to an agreement allowing the Makis to stay at the apartment until they found another one by July 1. After being told the Makis would not move until July 18, and concerned that the "grace period" already given might extend indefinitely, Drew, with Safranek's knowledge and consent, sent the June 28 letter explaining that the Makis must leave by August 1.

Although it might appear that there is a factual dispute serious enough to preclude summary judgment, the record is actually clear that the Makis sought to terminate their tenancy and that the purported notice of eviction is no more than the product of a negotiated solution reflecting the fact that the Makis no longer wished to be tenants of the Laakkos, but wanted some time to move. The fact that the Makis wanted to end their tenancy is clear from several parts of the record, which are discussed in more detail below.

The district court granted summary judgment for defendant on this basis on all the federal claims. The state claims were dismissed without prejudice. The district court had temporarily blocked the depositions of two other tenants at the apartment building, pending a status conference held June 28, 1993. The Makis claim that these depositions were blocked permanently and that summary judgment was improperly granted

on July 22, 1993, before the close of discovery scheduled for August 1.

## II

We review *de novo* the decision of a district court to grant summary judgment. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). To preclude summary judgment, the nonmoving party must present evidence, beyond his pleadings and his own conclusory statements, to establish the existence of specific triable facts. *Ibid.*

We conclude that the Makis' claim that they were forced from the apartment by the Laakkos was properly dismissed on summary judgment because the facts only allow the conclusion that the Makis left voluntarily. To state a prima facie case of housing discrimination under either 42 U.S.C. § 1981 or 42 U.S.C. § 3601 *et seq.*, a plaintiff must show the following:

(1) that plaintiff is a member of a protected class;

(2) that plaintiff applied for and was qualified to rent or purchase certain property or housing;

(3) that plaintiff was rejected;

(4) that the housing or rental property remained available thereafter.

*Selden Apartments v. Dep't of Housing and Urban Dev.,* 785 F.2d 152, 159 (6th Cir.1986). Summary judgment was appropriate because the record indicates that the Makis were never denied housing that they desired, and thus cannot meet the second element outlined in *Selden.*

Instead, the facts demonstrate that the Makis were unhappy with the rent increase, started looking for a new apartment, and reached an agreement with the Laakkos concerning when they would move. The uncontroverted testimony of the Laakkos establishes that they were willing to keep the Makis on as tenants, as long as they agreed to pay the rent increase. The Makis were given at least two chances to retain the apartment, yet refused the offer of a one-year lease, and balked at the rent increase to the extent that they refused to initial the letter notifying them of a rent increase, called a lawyer to complain about it, and only

paid the increased rent for one month, in the context of an agreement to leave at the end of the month. The only evidence that the Makis were willing to continue their tenancy after the rent increase is their current claim that they were willing to stay in the apartment and pay the increased rent indefinitely.

We are confident that the record as a whole provides enough evidence to contradict this claim and that the district court could grant summary judgment without having to make any credibility determinations or otherwise impermissibly weigh the evidence. The Makis' efforts to establish that they were uncomfortable in the apartment due to "harassment" serve to contradict any claims that they were happy to stay on in the apartment, yet were evicted. Counsel for the Makis summarizes their desires in his reply brief by arguing that "the only reason *they wanted to leave the apartment* was due to the treatment they started to receive at the hands of the Appellees around June 1, 1993." Appellants' Reply Brief at 12. The fact that the Makis wanted to leave and were looking for another apartment, coupled with the uncontested affidavit of Attorney Michael Drew that he drew up the notice to quit tenancy as a compromise to allow the Makis sufficient time to move and yet assure the Laakkos of a date when the apartment would be open for new tenants convinces us that the Makis' claim that they were evicted is unsupported.[1]

The harassment claim, while serving as a convenient explanation for the evidence that the Makis moved voluntarily, does nothing to advance their discrimination claim. The incidents that the Makis claim constituted harassment amount to no more than minimal friction between a landlord and tenants. Counsel for the Makis should have informed them that activities such as admonishments about excessive wear, use or abuse of areas they were not explicitly given the right to use

by their month-to-month lease, and taking mail addressed to the "owner/resident" do not amount to harassment. The fact that counsel for the Makis chose to rely on such weak facts to support a claim for housing discrimination when the Makis appear to have vacated voluntarily is a telling indictment of just how meritless the claim is. The Makis were in no way forced from their tenancy because of harassment.

### III

■ Counsel for the Makis was not, however, content merely to argue that the Makis' voluntary departure from their leasehold constituted discrimination. Rather, he also made an unprecedented argument that the rent increase that precipitated the Makis' decision to seek less expensive quarters constituted impermissible discrimination on the basis of family status.

42 U.S.C. § 3604(b) prohibits discrimination in the terms or conditions under which housing is sold or leased. The Makis have seized upon the fact that it is unlawful to discriminate on the basis of "familial status," and contend that the Laakkos decided to increase their rent because they had children, thereby discriminating against them on the basis of family status. The statute that serves as the basis for this claim makes it unlawful

> To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(b). The Makis thus contend that the Laakkos decision to raise their rent was illegally motivated because of the Makis' "familial status."

---

1. Plaintiffs' counsel repeatedly attempts to contradict this affidavit by unsworn assertion. *See* Plaintiffs' Brief in Opposition to Defendants' Motion for Partial Summary Judgment and Cross–Motion for Partial Summary Judgment, pp. 4–5 filed June 27, 1994 ("Safranek informed Mr. Drew that this was not his understanding"); Plaintiffs' Response to Defendants' Brief in Opposition to Plaintiffs' Cross–Motion for Partial Summary Judgment, p. 1, n. 1 filed July 15, 1994

("Attorney is prepared to file an affidavit contradicting Michael Drew's affidavit"); Appellants' Brief at 10 ("Attorney was called about this letter and told that no such date was agreed upon," citing the June 27 Brief); Appellants' Reply Brief at 2 ("Appellees specifically denied this alleged fact," citing the July 15 Response). However, this is all wind-up and no pitch. In the absence of opposing affidavits, the Drew affidavit remains uncontroverted.

This claim suffers from factual shortcomings similar to those afflicting the Makis' other claims, and would require this court to make an unprecedented and patently ludicrous extension of the law. In his brief and at oral argument, counsel for the Makis argued that the provision of the Fair Housing Act excerpted above makes it illegal for landlords to charge additional rent on the basis of the number of persons occupying dwellings if the "persons" are children.

Safranek argues explicitly that the familial status of children will be unprotected if a landlord can charge the same rent for two adults and one child as for three adults, because then there will have been an increase "because of" the child, even though there would have been exactly the same increase "because of" a third adult. Safranek is right that this is a claim of first impression, perhaps because it is a claim of such breathtaking audacity that no one ever dared to raise it before. Certainly, no case, article, or treatise discussing "familial status" discrimination ever thought to contemplate the idea that treating a child the same as other persons could be discrimination. All of the cases and commentators discuss the opposite possibility: that a landlord would refuse to rent or charge *more* if there were two adults and a child than if there were three adults. *See Glover v. Crestwood Lake Section 1 Holding Corp.*, 746 F.Supp. 301, 303, 310 (S.D.N.Y.1990). Indeed, the essence of non-discrimination is to treat persons the same, despite the alleged discriminatory condition.

Though plaintiffs make much of the fact that the plaintiffs' lease (to which defendants were not a party) states that premises will not be occupied by more than "[stated number] of adults and [stated number] of children," the rent charged was not stated or computed in terms of the composition of the family in the apartment. There is also an "extra party" clause, never invoked in this case, that specifies additional rent of $1.50 per day if extra persons (above the number specified in the lease) stay in the apartment. Plaintiffs' statement in their brief that defendants were charging $45 for each child is wholly an invention of counsel.

While plaintiffs admit that there is no precedent to this effect in this circuit, counsel for the Makis suggests in his brief that a contrary reading would "eviscerate the statute," and that case law from other circuits supports his position. Counsel calls our attention to *United States v. Badgett*, 976 F.2d 1176 (8th Cir.1992), and *Soules v. Dep't of Housing and Urban Dev.*, 967 F.2d 817 (2d Cir.1992). Neither case supports the proposition that charging additional rent for additional occupants violates § 3604(b) when the additional occupants happen to be children. In *Badgett*, the Eighth Circuit held that a policy requiring only a single occupant in one-bedroom apartments, coupled with efforts to discourage a single mother from renting a two-bedroom apartment, violated the Fair Housing Act. *Badgett* thus deals exclusively with occupancy standards, and neither addresses variable rental-rates nor establishes a principle applicable to such matters. The Makis' brief cites *Soules* for the proposition that Congress intended the FHA to eliminate discrimination against families with children, and counsel for the Makis, at oral argument, suggested the case supported his strained reading of the statute. *Soules*, however, is properly cited only for the proposition that Congress meant the FHA to "eliminate direct discrimination against families with children." *Soules*, 967 F.2d at 821. Thus, despite his assertions at oral argument, there is no case law to support the position taken by counsel for the Makis.

Nor does his argument that the plain language of the FHA prevents landlords from applying additional per-person rental charges to children persuade us of the legitimacy of the Makis' claim. The Makis' brief argues that

If this circuit were to adopt the position advocated by the appellees, and accepted by the district court, it would allow landlords to place a heavier burden on families than single persons and would especially hurt families with children. In fact, such a decision would effectively destroy the purpose of the addition of "familial status" to the Fair Housing Act.

Opening Brief of Plaintiff/Appellant at 20. We cannot agree with the Makis' reading of the FHA.

The text of the statute offers no support for the Makis' position that the FHA renders illegal efforts to charge tenants more for each occupant. The Act merely outlaws discrimination on the basis of familial status. Under a rental pricing system that charges additional rent for additional occupants, a mother, father, and one child would be charged the same amount of rent as three unrelated individuals. Therefore, such a rental policy is neutral with respect to family status.

## IV

■ In addition to arguing their discrimination claims in a confusing thicket of title VII and Fair Housing Act provisions (unnecessary given that the standards are the same for both pursuant to the *Selden* holding) counsel for the Makis tried to append a claim pursuant to 42 U.S.C. § 1985(3), alleging a conspiracy to deprive the Makis of their rights. Rather than develop a full argument for their § 1985(3) claim, the Makis' brief does no more than assert that their arguments in support of their § 1981 and § 3604 claims show that they should prevail under this provision as well.

■ Under 42 U.S.C. § 1985(3) the appellants must show the following: (1) a conspiracy between at least two persons; (2) that the object of the conspiracy is to deprive the plaintiff of equal protection of the law or of privileges and immunities under the law; (3) an act by at least one conspirator in furtherance of the object; and (4) injury to the plaintiff as a result of the conspiracy. *Griffin v. Breckenridge*, 403 U.S. 88, 102–103, 91 S.Ct. 1790, 1798–1799, 29 L.Ed.2d 338 (1971).

As the district court correctly pointed out (Judgment and Order at 7), to state a claim under this provision, the Makis must show there is some racial or otherwise class-based invidiously discriminatory animus behind the Laakkos' actions. *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798. The district court also correctly noted that the Makis presented no facts to support this element of *Griffin*, and

that this case did not appear to involve any class-based animus on the part of the Laakkos.

## V

■ Finally, the Makis argue that the district court incorrectly granted summary judgment before the close of discovery. Summary judgment is, of course, inappropriate before the passage of adequate time for discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–2555, 91 L.Ed.2d 265 (1986). Because further discovery would not have changed the legal and factual deficiencies we have already noted in the Makis' claims, however, affirmance of the district court is warranted.

This allegation of error might carry some force if the Makis could explain why the depositions of the current and former tenants, which were delayed pending a status conference on June 28, would furnish the missing facts to complete their prima facie case for discrimination. Instead, counsel for the Makis explains that this further discovery might uncover proof of disparate impact. That is, the depositions might uncover that the Laakkos afforded even more favorable treatment to renters with different ethnic backgrounds or family statuses. Since this would still not establish how the Makis were adversely affected by the Laakkos, given the foregoing analysis of the parties' intentions with regard to ending their relationship, any further discovery would not have affected the summary judgment decision. In any event, the court explicitly ruled, in an order of July 8, 1994, that it had not issued any protective order, and that plaintiffs' unsupported claim to the contrary could be sanctionable. The discovery dispute will therefore not stand as grounds to disturb the summary judgment decision on appeal.

## VI

We note that the resolution of this dispute has been far from costless. The Laakkos attempted to raise the rent on an apartment by $50 per month, which was wholly within their rights. They also withheld a $787.50 security deposit, an action that, while emi-

nently disputable in state court, they had a strong colorable basis for doing (see the Laakkos' letter of July 22, 1993 concerning damage to the apartment. Plaintiff's Cross–Motion for Partial Summary Judgment, Exh. 8.) As a result of the current creative and artful (though meritless) lawsuit instituted by a law professor, the Laakkos have been forced to incur at least $36,000 in legal fees (see original counsel's motion to withdraw), even before oral argument in this case. Events such as this tend to bring into disrepute both the legal profession and laws originally passed to address serious social ills.

## VII

For the foregoing reasons, the decisions of the district court are all **AFFIRMED.**