96 F.3d 1448
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NATIONAL BANK OF DETROIT, Plaintiff-Appellee,
v.
MICHAEL KAUFMAN COMPANIES, INC. and Michael Kaufman,
Defendants-Appellants.
 No. 95-1788.
 United States Court of Appeals, Sixth Circuit.
 Aug. 30, 1996.
 
 Before: KEITH, BOGGS, and COLE, Circuit Judges.
 PER CURIAM.
 
 
 1
 This appeal arises from a dispute over which of two creditors of an insolvent concern should receive funds paid to the concern for performance of contracts. Michael Kaufman Companies, Inc. and its sole shareholder, Michael Kaufman (collectively referred to hereinafter as "Kaufman") furnished goods to the debtor and argues that a joint-check arrangement for payment to the debtor lets it take the funds despite the appellee's perfected security interest. This argument is new on appeal and, in any event, is not a recognized means of defeating such a security interest. We therefore affirm the district court's grant of summary judgment for the plaintiff.
 
 
 2
 * This dispute arises from the fact that Kaufman and National Bank of Detroit ("NBD") were both creditors of Northern Educational Products, Inc., ("Northern"). Kaufman is a small concern that supplies materials such as blackboards and other educational equipment to contractors for installation. Kaufman supplied Northern with blackboards for Northern to install in several schools in Indiana, pursuant to a contract Northern had with Reinke Construction Corporation ("Reinke"), an Indiana contractor that was the primary contractor for the school projects.
 
 
 3
 NBD, for its part, had a longstanding commercial lending agreement with Northern, involving a security agreement since 1988. NBD's perfected security interest extended to Northern's account receivables, in addition to most other items of value in Northern's possession. Kaufman does not challenge the legal status of NBD's security interest, but relies instead on a unique arrangement between itself, Northern, and Reinke.
 
 
 4
 In order to avoid problems such as security interests taken in Northern's assets, and generally assure itself of payment for its chalkboards, Kaufman insisted upon a "joint-check" arrangement with Reinke and Northern. In its brief, Kaufman explained that "Kaufman & Co. agreed with Northern and with Reinke that Kaufman & Co. would supply materials for these jobs, but on the express condition that Reinke would issue joint checks payable to Kaufman and Northern for payment before Kaufman would release its lien rights on the jobs." As a result of this agreement, Reinke issued two "joint checks," one in June 1992 and one in January 1993. Kaufman kept $44,000 from the two checks, representing the value of the materials supplied to Northern. Kaufman remitted the remaining $19,000 to Northern.
 
 
 5
 Unfortunately for Kaufman, Northern's note to NBD had fallen into default as of May 1992. Such default allowed NBD to recover any of Northern's assets in which it had taken a security interest. Thus, NBD filed this action to force Kaufman to disgorge the money it received from Northern in the joint-check arrangement, citing the fact that NBD had a security interest in the funds generated by Northern's contract with Reinke. The district court granted NBD's motion for summary judgment, and Kaufman now appeals.
 
 II
 
 6
 Kaufman makes essentially three arguments on appeal. First, it claims the funds were not "accounts receivable" because of the joint-check arrangement, and thus were free to be transferred to Kaufman. Second, it contends that the security agreement between Northern and NBD allowed Northern to use these funds. Third, Kaufman argues that there are disputed facts and "other problems with the situation." Because the district court granted NBD summary judgment, we review Kaufman's asserted errors de novo. Maki v. Laakko, 88 F.3d 361, 364 (6th Cir.1996).
 
 
 7
 First, Kaufman's argument characterizing the joint-check arrangement as something other than a Northern account receivable is new on appeal. The court will not consider an argument on appeal that could have been raised below, but was not. Niecko v. Emro Marketing, Co., 973 F.2d 1296, 1299 (6th Cir.1992). Kaufman's assertions that these are not new arguments are not persuasive and are not supported by the record below. In its reply brief, Kaufman argues that it did raise the joint-check issue below, and refers us to portions of its brief in opposition to summary judgment that it believes substantiate this claim. The arguments related to the joint-check scheme, however, all reflect an estoppel argument: in essence, "NBD knew of the arrangement and let us go ahead, therefore they are estopped from enforcing their security interest." These arguments are not developed beyond this conclusory stage, but seem to admit that NBD had superior legal rights to Kaufman, yet for other reasons, should not be allowed to assert these rights. Now, on appeal, Kaufman equates this position with its position on appeal that the joint-check arrangement operates to defeat NBD's rights in the collateral. This we cannot do. The district court was not called upon to reach this question (the magistrate judge's report, at page 8, even noted that Kaufman "has not taken a position as to how the priority issue should be resolved under Indiana law."), leaving us with no ruling to review.
 
 
 8
 Nonetheless, even if we ignore the newness of this issue and reach the merits of the argument that these checks were not accounts receivable, the governing law clearly indicates NBD's interpretation is correct. Neither side disputes that Indiana's version of the Uniform Commercial Code governs the transaction. Kaufman asserts that the joint-check scheme somehow transmuted the Reinke contract into something other than an account receivable. This ignores the fact that Northern remained the subcontractor to whom payment was due. Even if Northern contracted away its right to be paid for its services, NBD still had a priority interest in any sums so disposed of by Northern once Northern was in default. A bedrock principle of secured credit is that where a debtor makes an unauthorized transfer of collateral, the secured creditor is entitled to track the collateral and take it from the assignee.
 
 
 9
 In most cases when a debtor makes an unauthorized disposition of collateral, the security interest, under prior law and under this Article, continues in the original collateral in the hands of the purchaser or other transferee. That is to say, since the transferee takes subject to the security interest, the secured party may repossess the collateral from him or in an appropriate case maintain an action or conversion. Subsection (2) codifies this rule.
 
 
 10
 U.C.C. § 9-306, Commentary. Although the joint-check transaction looks a little different, its fundamental nature is the same. Reinke agreed to pay Northern and its supplier for work that Northern performed. Northern could no more allow Kaufman to take part of the money, or hold the payment check due from Reinke, than it could have, for example, given parts of its equipment covered by a security agreement to an unsecured creditor to discharge obligations or raise money. Kaufman's arguments belie an unwillingness to accept the fact that it furnished goods on credit without proper security and cannot remove funds covered by a security interest by claiming that the debtor gave it the right to collect the funds first. Once default occurred, those funds, or the right to them, were not Northern's to dispose of as it saw fit.
 
 
 11
 Kaufman's argument that Northern could dispose of the funds as it saw fit, according to the terms of the security agreement, is equally without merit. Although Northern could do as it saw fit with funds while it was not in default, the whole point of a security interest is to limit the debtor's rights to dispose of assets after default on credit obligations. The agreement between Northern and NBD specified that "until Borrower is in default, it may use the funds collected in its business." Northern was in default on its agreements when both checks were issued, meaning that NBD could make efforts to collect on the contractual right to be paid for work completed by Northern.
 
 
 12
 Kaufman's arguments that there were factual issues that preclude summary judgment ignores the fact that these arguments are identical to the legal arguments it raised elsewhere, or are new on appeal. They do not lead us to question the decision to grant summary judgment.
 
 
 13
 For the above reasons, we AFFIRM the district court's grant of summary judgment.