[Cite as *Greenlee v. Richart*, 2025-Ohio-2540.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| KIEL T. GREENLEE ET AL. | : | |
| | : | C.A. No. 30302 |
| Appellants | : | |
| | : | Trial Court Case No. 2023 CV 05818 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| ANN RICHART ET AL. | : | Court) |
| | : | |
| Appellees | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 18, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

[[Applied Signature]]

MICHAEL L. TUCKER, JUDGE

Lewis, J., and Huffman, J., concur.

**OPINION**
MONTGOMERY C.A. No. 30302

KIEL T. GREENLEE, Appellant, Pro Se
JARED A. WAGNER & D. ALEXANDER NISWONGER, Attorneys for Appellee Ann Richart
ANTHONY PEREZ, Appellee, Pro Se

TUCKER, J.

{¶ 1} Plaintiffs-appellants Kiel T. Greenlee and Angela C. Greenlee appeal from a summary judgment rendered against them on their discrimination claim against defendant-appellee Ann Richart. They also appeal from a judgment, following a bench trial, rendered in favor of defendant-appellee Anthony Perez on various causes of action. For the reasons set forth below, we affirm.

## I. Factual and Procedural History

{¶ 2} Richart is the owner of two rental homes located side-by-side on Meadowcreek Drive in Centerville, Ohio. On October 1, 2021, Richart entered into a lease agreement with Perez for the rental of the home located at 8708 Meadowcreek Drive. On November 4, 2022, Richart and the Greenlees entered into a lease agreement for the rental of the home located at 8710 Meadowcreek Drive. The terms of the Greenlees' lease provided that it would terminate on October 23, 2023.

{¶ 3} During the summer of 2023, disputes arose between the Greenlees and Perez. As will be discussed below, Perez contacted both Richart and law enforcement regarding complaints of excessive noise coming from the Greenlees' home. On September 26, 2023,

Richart provided the Greenlees with a notice of non-renewal of the lease.

{¶ 4} On October 31, 2023, the Greenlees filed a complaint against Richart and Perez. The complaint set forth claims for relief against Richart alleging that she: (1) failed to inspect and maintain the premises for an ant infestation; (2) took retaliatory action against them in violation of R.C. 5321.02 and R.C. 5321.04; (3) breached their common law right to quiet and peaceful enjoyment of the premises; (4) breached their contractual right to quiet and peaceful enjoyment of the premises; (5) breached an oral agreement regarding the term of the lease; (6) discriminated and retaliated against them by giving notice of non-renewal of the lease based on race, familial status, and veteran status in violation of R.C. 4112.02(H) and (I); and (7) conspired with Perez to breach the Greenlees' right to quiet and peaceful enjoyment of the premises. With respect to Perez, the complaint alleged that he: (1) conspired with Richart to breach the Greenlees' right to quiet enjoyment of the premises; (2) created a nuisance which deprived the Greenlees of their right to quiet and peaceful enjoyment of the premises; (3) made defamatory statements about the Greenlees; and (4) interfered with the Greenlees' contractual relationship with Richart.

{¶ 5} Richart and the Greenlees filed motions for summary judgment. Following briefing, the trial court granted summary judgment in favor of Richart on the causes of action the Greenlees had asserted against Richart.

{¶ 6} A bench trial was subsequently conducted on the Greenlees' claims against Perez. The Greenlees appeared pro se at trial, with Kiel Greenlee acting as counsel for himself and his wife. Perez was unrepresented by counsel at trial. Following the trial, the court issued a judgment in favor of Perez.

{¶ 7} The Greenlees appeal from the summary judgment rendered in favor of Richart solely as to the claim of housing discrimination. They also appeal the judgment in favor of

Perez regarding all claims except the cause of action for nuisance.

## II.     Summary Judgment

{¶ 8} The Greenlees' first assignment of error states as follows:

JUDGE DANKOF COMMITTED REVERSIBLE ERROR BY MAKING AN ERROR OF LAW AND ABUSED HIS DISCRETION REGARDING SUMMARY JUDGMENT ON APPELLANTS' DISCRIMINATION CLAIM.

{¶ 9} The Greenlees contend the trial court erred in entering summary judgment against them on their discrimination claim.

{¶ 10} "Under Civ.R. 56(C), a movant is entitled to summary judgment when the movant demonstrates 'that there is no issue as to any material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party.'" *Rhododendron Holdings, LLC v. Harris*, 2021-Ohio-147, ¶ 22 (2d Dist.), quoting *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 617 (1998). "We review a trial court's ruling on a summary-judgment motion de novo." *Id.*, citing *Schroeder v. Henness*, 2013-Ohio-2767, ¶ 42 (2d Dist.).

{¶ 11} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making conclusory allegations. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id*. If the moving party meets its burden, then the non-moving party has a reciprocal burden to

set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. If the non-moving party does not so respond, summary judgment, if appropriate, shall be entered against the non-moving party. *Dreshe*r at 293.

{¶ 12} Housing discrimination proscribed by R.C. 4112.02(H) may be proven by direct evidence. *Carter v. Russo Realtors*, 2001 WL 537019, *2 (10th Dist. May 22, 2001). "Direct evidence is 'proof which speaks directly to the issue, requiring no support by other evidence.' " *Id.*, quoting *Randle v. LaSalle Telecommunications, Inc.*, 697 F.Supp. 1474, 1478 (N.D.Ill. 1988). In the absence of direct evidence, a plaintiff may proceed under the burden-shifting framework set forth *in McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Friedman v. Ebner Properties*, 2023-Ohio-4398, ¶ 21 (10th Dist.). Under this standard, "a plaintiff bears the initial burden of establishing a prima facie case of discrimination." *Carter* at *1. To do that, a plaintiff asserting a housing discrimination claim must show that: (1) he is a member of a protected class, (2) he applied for and was qualified to rent or purchase specific housing, (3) he was rejected, and (4) the property remained available. *Maki v. Laakko*, 88 F.3d 361, 364 (6th Cir. 1996).

{¶ 13} "Once a prima facie case is established, a rebuttable presumption [of discrimination exists which] shifts the burden to the defendant to articulate a legitimate, nondiscriminatory reason for taking action against the plaintiff." *Carter* at *1. "If the defendant articulates such a reason, the presumption disappears and the plaintiff bears the burden of proving the defendant's proffered reason is merely a pretext for discrimination." *Id.* By presenting only a *McDonnell Douglas* burden-shifting argument, the Greenlees implicitly admit there was no direct evidence of discrimination before the trial court.

{¶ 14} We will presume that the Greenlees established a prima case of housing discrimination and proceed to determine whether Richart presented a legitimate,

nondiscriminatory reason for not renewing the lease agreement. In an affidavit, Richart stated that she did not renew the Greenlees' lease because of the acrimony between them and Perez, with Perez being the longer-term, more dependable tenant. She also stated that, on multiple occasions, the Greenlees failed to timely pay their rent. On their face, both of these stated reasons were legitimate, nondiscriminatory reasons for not renewing the Greenlees' lease. Thus, we must determine whether the Greenlees created an issue of fact that the stated reasons were pretextual.

{¶ 15} First, we note there is no evidence in this record that Perez failed to comply with the terms of his lease, and there is no evidence to refute Richart's claim that Perez was a more dependable renter with a longer rental history. Also, there is no dispute that the Greenlees and Perez had, at best, a contentious relationship.

{¶ 16} Next, the record supports Richart's claim that the Greenlees were late on some of the rental payments. In their motion for summary judgment and their response to Richart's motion for summary judgment, the Greenlees argued that their rent payments had not been late. In support, they argued that the lease did not specify how the payments were to be made and that Richart had regularly accepted rent checks from Angela Greenlee while Angela and Richart were at their mutual place of employment. Thus, they argued the checks due on weekends or holidays could not be paid until the following workday.

{¶ 17} The lease agreement stated that rent payments were due the first day of each month. While the record indicates that Richart did accept payments from Angela while at their place of employment, there was no evidence that she required the payments to be made there. Indeed, the lease agreement provided that rent payments could be mailed, but they were still required to be received by the first day of the month. The evidence submitted by both Richart and the Greenlees demonstrated that the Greenlees' payments

for January, June, July, and October 2023 were late.  Copies of those checks, which were part of the summary judgment record, showed that two were dated the 3rd of the month, one was dated the 2nd of the month, and one was dated the 5th of the month

{¶ 18} Based on this evidence, we cannot say that the trial court erred in finding that Richart had demonstrated non-discriminatory reasons for non-renewal of the lease and that the Greenlees had failed to produce any evidence that those reasons were pretextual. Thus, we conclude the trial court did not err in granting summary judgment on the Greenlees' housing discrimination cause of action.

{¶ 19} The first assignment of error is overruled.

### III.    Manifest Weight

{¶ 20} For their second assignment of error, the Greenlees assert the following:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DECIDING AGAINST APPELLANTS ON THEIR CLAIMS REGARDING ANTHONY PEREZ AS THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 21} The Greenlees argue that the evidence presented at trial supported their claims against Perez and that the trial court erred in finding otherwise.

{¶ 22} When reviewing manifest weight of the evidence arguments in appeals of civil cases, we utilize the standard set forth in *State v. Thompkins*, 78 Ohio St.3d 380 (1997). *Amesse v. Wright State Physicians, Inc.*, 2018-Ohio-416, ¶ 46 (2d Dist.), citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 17 (2012).  "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' " *Eastley* at ¶ 12, quoting *Thompkins* at 387.  In determining

whether a verdict is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the verdict must be reversed and a new trial ordered. *Id.* at ¶ 20.

{¶ 23} As stated above, the Greenlees' complaint asserted four claims against Perez: (1) breach of the covenant of quiet and peaceful enjoyment of their rental premises; (2) breach of the covenant of quiet enjoyment resulting from private nuisance; (3) defamation; and (4) tortious interference with contract. We note that the Greenlees did not address their claim of private nuisance in their initial appellate brief, and therefore Perez did not address it in his brief. However, the Greenlees raised the issue as a separate assignment of error in their reply brief.

{¶ 24} "Under App.R. 16(C), an 'appellant may file a brief in reply to the brief of the appellee.' 'The purpose of a reply brief is to afford the appellant an opportunity to respond to the brief of the appellee, not to raise a new argument for the first time.' " *Russell v. Ryan*, 2021-Ohio-2505, ¶ 34 (10th Dist.), quoting *Cullinan v. Ohio Dept. of Job & Family Servs.*, 2016-Ohio-1083, ¶ 19 (10th Dist.). *See also Calex Corp. v. United Steelworkers of Am.*, 137 Ohio App.3d 74, 80 (7th Dist. 2000) ("A reply brief may not raise new assignments, which were omitted from appellants' original brief, especially where leave to file a new assignment was not sought from [the appellate] court."). Thus, the argument about private nuisance that the Greenlees raise for the first time in their reply brief will not be considered. *Russell* at ¶ 34; *State v. Whitaker*, 2022-Ohio-2840, ¶ 52.

{¶ 25} We next address the Greenlees' claim that Perez breached their right to quiet enjoyment of their rental premises. The Greenlees do not cite, and we cannot find, any

authority indicating that a neighbor can be found liable for breaching an individual's right to quiet enjoyment of property. Instead, Ohio case law indicates that "a covenant of quiet enjoyment is implied into every lease contract for realty and protects the tenant's right to a peaceful and undisturbed enjoyment of his leasehold." *Davis v. Sean M. Holley Agency, Inc.*, 2010-Ohio-5278, ¶ 12 (2d Dist.), quoting *Dworkin v. Paley*, 93 Ohio App.3d 383, 386 (8th Dist. 1994). "The covenant is breached when the landlord obstructs, interferes with, or takes away from the tenant in a substantial degree the beneficial use of the leasehold." *Id.* Because there was no lease or other contractual relationship between the Greenlees and Perez, we must conclude this claim failed as a matter of law.

{¶ 26} Next, we address the Greenlees' claim that Perez defamed them.

"Defamation is a false publication causing injury to a person's reputation, or exposing the person to public hatred, contempt, ridicule, shame or disgrace or affecting him adversely in his trade or business." Defamation can be in the form of either slander or libel. Slander generally refers to spoken defamatory words while libel refers to written or printed defamatory words. The essential elements of a defamation action, whether slander or libel, are that the defendant made a false statement of fact, that the false statement was defamatory, that the false defamatory statement was published, that the plaintiff was injured and that the defendant acted with the required degree of fault.

(Citations omitted.) *Matikas v. Univ. of Dayton*, 2003-Ohio-1852, ¶ 27 (2d Dist.).

{¶ 27} The Greenlees assert that Perez made numerous false noise complaints against them to both the police and Richart. The record indicates that Perez contacted the police on at least six occasions, complaining of loud noise when the Greenlees were utilizing

their outdoor patio. At trial, the Greenlees submitted police incident reports generated from those noise complaints. They argue that the reports confirmed Perez's complaints were false because the police declined to issue noise citations upon arrival and investigation.

{¶ 28} First, we cannot conclude the police reports were dispositive of the truth or falsity of Perez's complaints. As noted by the trial court, the mere fact that the police "upon arrival heard no offending noise emanating from [the Greenlees'] residence hardly means such noise never occurred". Further, the witness testimony at trial did not support a finding that Perez's complaints were falsely made. Specifically, Perez testified that his complaints to the police were based upon excessive noise coming from the Greenlees' residence; he testified that the Greenlees were very loud and that the noise affected his ability to sleep. The trial court expressly found Perez's testimony on this issue to be credible.

{¶ 29} Significantly, Angela Greenlee did not deny Perez's claims of excessive noise. She merely testified that Perez "never called [the police] when it was just the two of us. Only when we have friends over." She also admitted that she and her husband had "a lot of guests over" for "adult parties" and "we're drinking."

{¶ 30} "Because the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 1997 WL 476684, *4 (2d Dist. Aug. 22, 1997). The court, as the trier of fact, "is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Grant*, 2020-Ohio-3055, ¶ 50 (2d Dist.), citing *State v. Wright*, 2002-Ohio-4279, ¶ 25 (8th Dist.).

{¶ 31} Here, the trial court expressly stated that it found the Greenlees lacked credibility and that Perez was credible. Based on our review of the transcript, this finding was reasonable; there was nothing inherently incredible about Perez's testimony. Therefore, we find no merit in this argument.

{¶ 32} Finally, we address the Greenlees' claim that the evidence supported a finding that Perez had interfered with the contractual relationship between them and Richart.

{¶ 33} "The elements of tortious interference with a contract include '(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages.' " *Daly v. Certo*, 2025-Ohio-293, ¶ 83 (2d Dist.), quoting *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995).

{¶ 34} The Greenlees' claim of contractual interference rests upon their claim that Perez intentionally caused a breach of the lease agreement by making false statements to the police and Richart. As stated above, the trial court found Perez's testimony regarding his statements to Richart and the police to be credible, and the record supports the trial court's conclusion with respect to the defamation claim that Perez did not make false statements concerning the Greenlees. This conclusion necessarily applies to the claim for contractual interference, as it was based on the same evidence.

{¶ 35} From our review of the record, we cannot say that the trial court lost its way so as to create a miscarriage of justice. As such, we conclude that the verdict in favor of Perez was not against the manifest weight of the evidence.

{¶ 36} The second assignment of error is overruled.


## IV. Privilege

{¶ 37} The third assignment of error states:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ALLOWING ANTHONY PEREZ TO ENTER AN AFFIRMATIVE DEFENSE, WITHOUT ANY PRIOR PARTICIPATION IN THE CASE, ONE WEEK BEFORE TRIAL, AS IT SHOULD HAVE BEEN DEEMED WAIVED. THE TRIAL COURT ABUSED ITS DISCRETION IN THIS REGARD, AND COMMITTED REVERSIBLE ERROR OF LAW BY FINDING THAT PEREZ HAD ESTABLISHED HIS DEFENSE OF QUALIFIED PRIVILEGE AS PEREZ'S TESTIMONY AND THE EVIDENCE ESTABLISHED THAT HIS STATEMENTS TO THIRD PARTIES WERE MADE IN RECKLESS DISREGARD.

{¶ 38} The Greenlees claim the trial court erred by permitting Perez to assert the affirmative defense of qualified privilege in relation to their claim for defamation, as he failed to raise the defense in his answer to the complaint. They further claim the trial court erred in finding that Perez's statements to law enforcement were protected by the defense of qualified privilege.

{¶ 39} "Qualified privilege is an affirmative defense to a defamation claim, and the defendant must plead it separately from a general denial." *Anderson v. WBNS-TV, Inc.*, 2024-Ohio-4880, ¶ 22 (10th Dist.), citing *Cooper v. Grace Baptist Church, Inc.*, 81 Ohio App.3d 728, 734 (10th Dist. 1992), citing *Douglas Elec. Corp. v. Grace*, 70 Ohio App.3d 7, 12 (2d Dist. 1990). "Failure to raise an affirmative defense in a responsive pleading or amended pleading constitutes a waiver of the defense." *Id.*, citing *Cooper* at 734-35.

{¶ 40} Perez did not raise the defense in his pro se answer, and nothing in that answer can be construed as putting the Greenlees on fair notice of his intent to assert that

defense. It also was not raised in any other responsive pleading or by an amended pleading. Thus, despite Ohio's liberal notice pleading system, Perez failed to sufficiently raise the defense. We note that the defense was raised by Perez in his motion for summary judgment filed on October 17, 2024. However, a motion for summary judgment does not constitute a responsive or amended pleading. Furthermore, the motion for summary judgment was not properly before the court; it was filed late, and Perez's motion for leave to file it was denied.

{¶ 41} Because we agree that the affirmative defense of qualified privilege was not properly asserted, the trial court erred in considering it. However, given our resolution of the second assignment of error, which otherwise upholds the trial court's decision on the defamation claim, this error was harmless. Accordingly, the third assignment of error is overruled.

## V. Trial Interference

{¶ 42} The Greenlees' fourth assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY NOT ALLOWING APPELLANTS THE TIME NEEDED TO FULLY PRESENT THEIR CASE AT TRIAL.

{¶ 43} The Greenlees' entire argument in this assignment of error states as follows: "The trial transcripts are clear that the trial court routinely interfered with and rushed the trial along for its own convenience. Which, in turn, did not allow Appellants to properly play recordings and videos and question their witnesses as to the contents thereof. This clearly effected [sic] the outcome of the trial and should be grounds for a new trial on the basis of the trial court's interference."

{¶ 44} We begin by noting the Greenlees have failed to comply with App.R. 16 because they do not include references to the places in the record where the claimed errors are reflected. App.R. 16(A)(3). Instead, the Greenlees broadly reference the entirety of the trial transcript, which is over 100 pages in length. While we have no obligation to scour the transcript for passages relevant to this argument, we have, in fact, reviewed the entire trial transcript due to the manifest weight of the evidence assignment of error.

{¶ 45} The transcript reveals that during his direct examination of his wife, Kiel Greenlee attempted to introduce a video recording. Greenlee informed the court that the video showed that a law enforcement officer came to the duplex based upon Perez's assertion that the Greenlees had violated a temporary protection order issued against them. Kiel also stated that the video demonstrated that the officer declined to issue a citation against the Greenlees. The trial court stated that, in the absence of evidence to the contrary, it would accept Kiel's representation as true and accurate, thus obviating the need to view the video. Kiel voiced no objection. Because Kiel was permitted to inform the court as to the contents of the video, and the trial court accepted his statement as true, we can discern no error.

{¶ 46} Later in the transcript, the court and the parties discussed a series of video recordings depicting a confrontation between the Greenlees, Perez, and Perez's ex-wife. The trial court stated that it would review the videotapes in chambers after the conclusion of the trial. Neither party objected. Further, the transcript shows that Kiel did conduct questioning regarding the contents of the video.

{¶ 47} We conclude that the transcript does not support the Greenlees' claim that the trial court rushed them through trial or that, in doing so, it prevented them from properly presenting the evidence set forth on the videos. Accordingly, the fourth assignment of error

is overruled.

## VI.    Amendment of Complaint

{¶ 48} The fifth assignment of error is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY NOT ALLOWING APPELLANTS TO SUPPLEMENT THEIR COMPLAINT AND SUPPLEMENT THEIR AFFIDAVITS.

{¶ 49} In this assignment of error, the Greenlees claim the trial court erred and abused its discretion when it "denied Appellants [sic] supplementals without giving a reason[.]"

{¶ 50} Relevant hereto, the record shows that the Greenlees' initial complaint in this case was filed on October 31, 2023.   Perez filed his answer on November 21, 2023, and Richart filed her answer on December 6, 2023.   On March 6, 2024, the Greenlees filed a pleading entitled "Plaintiffs' Supplemental Complaint for Relief."   The pleading stated: ". . . pursuant to Civ.R. 15(E), [the plaintiffs] supplements [sic] their Complaint for Relief with the following facts and circumstances that have taken place since the filing of the original Complaint for Relief in the instant action."   The document set forth numerous actions alleged to have taken place following the filing of the initial complaint and set forth an additional seven claims for relief.   On April 3, 2024, Richart filed a motion to strike the "supplemental complaint," arguing that the Greenlees had not complied with Civ.R. 15(E) because they had failed to seek leave to file the supplemental complaint.   The Greenlees

filed a response and, on May 30, 2024, the trial court sustained the motion to strike.[1]

**{¶ 51}** Civ.R. 15(E) states, in pertinent part, as follows:

Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense.

**{¶ 52}** A plain reading of the rule makes it clear that a party must first file a motion seeking permission from the court to file a supplemental pleading. The Greenlees failed to do so and, instead, simply filed their supplemental complaint. Even after the trial court clearly indicated that a motion for leave was a prerequisite to filing a supplemental complaint, the Greenlees did not attempt to seek leave.

**{¶ 53}** Because the Greenlees failed to comply with Civ.R. 15(E), the trial court did not err in striking their supplemental complaint. Thus, the fifth assignment of error is overruled.

## VII. Conclusion

**{¶ 54}** All assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.

---

[1] The trial court's decision and entry, which expressly stated that the Greenlees had failed to seek leave of court, belies the Greenlees' claim that the court failed to set forth a reason for striking the supplemental complaint.