[Cite as *Daly v. Certo*, 2025-Ohio-293.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| WILLIAM DALY | : | |
| | : | |
| Appellant | : | C.A. No. 30082 |
| | : | |
| v. | : | Trial Court Case No. 2023 CV 01307 |
| | : | |
| PETER R. CERTO, JR. et al. | : | (Civil Appeal from Common Pleas |
| | : | Court) |
| Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 31, 2025

. . . . . . . . . . .

WILLIAM DALY, Pro Se Appellant

JEFFREY C. TURNER, DAWN M. FRICK, PATRICK KASSON & AUSTIN RICHARDS, Attorneys for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Plaintiff-Appellant William Daly appeals from a judgment of the Montgomery County Common Pleas Court that granted summary judgment to Defendants-Appellees Steven Perfetti, Peter Certo, Jr., Jeffrey Slyman, Altick & Corwin, LPA, Buckley King, LPA, and the City of Riverside.   For the following reasons, we will affirm the judgment of the

trial court.

## I. Facts and Procedural History

{¶ 2} On March 14, 2023, Daly filed a civil complaint against Certo, Slyman, Perfetti, the law firm of Altick & Corwin, LPA, the law firm of Buckley King, LPA, and the City of Riverside. Daly raised seven claims for relief in his complaint. The first claim alleged that all the defendants were "COMPLICIT AND ACTING IN CONCERT *AND JOINTLY LIABLE*." (Emphasis in original.) No facts were alleged in support of this claim, which stated as follows:

> False Arrest, Abuse of Process, Abuse of police powers , Malicious prosecution, Sham prosecution, False Imprisonment, Intentional infliction of mental distress, tortious interference, retaliatory conspiracy, Business tort, damage to reputation, civil rights violations, A pattern of corrupt activities, a pattern of abuse under [sic], retaliatory action and conspiracy to damage plaintiff herein, intentional acts of Reprisal, libel, slander, failure to properly supervise, failure to monitor its employee's acts, failure to properly to supervise, Failure to control its employees all individually, jointly, severally and also in addition and or alternatively in an act in concert, and complicit acts to accomplish damage to plaintiff herein.

{¶ 3} The second claim involved only Certo, a licensed attorney in Ohio, who served as prosecutor for the City of Riverside and was a partner and shareholder at Altick and Corwin prior to the firm's being acquired by Buckley King, LPA. This claim alleged that Certo had committed torts of "ABUSE OF PROCESS, ABUSE OF AUTHORITY,

ENGAGE[D] IN VARIOUS ACTS OF MALICIOUS CONDUCT TO DAMAGE PLAINTIFF, ENGAGE[D] IN A RETALIATORY CONSPIRACY, AND LIBEL AND SLANDER." (Emphasis in original.)

{¶ 4} Daly's third claim was directed solely at Slyman, a licensed attorney in Ohio, who had acted as prosecutor on the underlying criminal cases that formed the basis of Daly's complaint. This claim alleged that Slyman had committed torts of "SHAM PROCESS, SHAM PRACTICE OF LAW AS A PROSECUTOR, ABUSE OF PROCESS, ENGAGE[D] IN VARIOUS ACTS OF MALICIOUS AND OR RECKLESS CONDUCT TO DAMAGE PLAINTIFF, ENGAGE[D] IN A RETALIATORY CONSPIRACY, LIBEL AND SLANDER, COERCION AND THREAT." (Emphasis in original.)

{¶ 5} Daly's fourth claim alleged that Riverside Police Officer Perfetti had damaged Daly through "ABUSE OF AUTHORITY, ENGAG[ING] IN VARIOUS ACTS OF MALICIOUS AND OR RECKLESS CONDUCT TO DAMAGE PLAINTIFF, ENGAG[ING] IN RETALIATORY CONDUCT OR PATTERN OF HARASSMENT, CONSPIRACY, LIBEL AND SLANDER." (Emphasis in original.)

{¶ 6} Daly's fifth and sixth claims alleged that Altick and Corwin, LPA and Buckley King, LPA, respectively, were vicariously liable for Certo's tortious actions.

{¶ 7} Daly's seventh claim alleged the City of Riverside was vicariously liable for the tortious conduct of its employees and the Riverside Police Department under the doctrine of respondeat superior.

{¶ 8} The underlying issues raised in the causes of action were primarily based on events that occurred in relation to a prior criminal investigation of Daly and resulting

criminal charges. Daly had been a licensed attorney in the State of Ohio since 1991. In 2018 and 2019, Daly had a principal place of business in Dayton, Ohio before moving to South Carolina in 2019. Prior to 2018, Daly had represented S.H. in a felony criminal case, a personal injury case, and a child custody case.

{¶ 9} On October 31, 2018, S.H. obtained an ex parte civil stalking protection order against Daly, which prohibited Daly from having any contact with S.H., either directly or through another person, and from having possession of any deadly weapon. The protection order also required Daly to turn over any deadly weapons and concealed carry weapon license in his possession to the law enforcement agency that served him with the order. The ex parte civil protection order was served on Daly on November 2, 2018.

{¶ 10} On the afternoon of November 2, 2018, Daly went to the Riverside Police Department to report an alleged theft offense. Officer Perfetti spoke with Daly at the police station. According to Daly, S.H. had stolen a necklace and prescription medication from his car when he had met with her approximately two weeks earlier. Although he tried to get the necklace back, S.H. refused to give it to him. Daly informed Officer Perfetti that he had been served with a protection order and provided Officer Perfetti with S.H.'s contact information.

{¶ 11} Officer Perfetti then met with S.H., who denied stealing the necklace and claimed it was a gift from Daly. Nevertheless, she gave the necklace to Officer Perfetti to return to Daly. Officer Perfetti again met with Daly at the Riverside Police Department on November 2, 2018, and gave Daly the necklace. Daly offered Officer Perfetti a card for free legal services, which Officer Perfetti refused. Daly then offered Officer Perfetti a

novelty knife, which Officer Perfetti also refused. Daly also offered to show Officer Perfetti nude photographs of S.H., which Officer Perfetti declined to view. During his conversation with Officer Perfetti, Daly stated that he had a gun on him and that he was supposed to inform Officer Perfetti of that fact. Officer Perfetti informed his supervisor of the events from that day and completed an incident report on November 3, 2018. Officer Perfetti had no further interactions with Daly or involvement with Daly's case.

{¶ 12} As a result of the events of November 2, 2018, Daly was charged in June 2019 in the Municipal Court of Montgomery County, Eastern Division, Case No. 2019-CRB-608E, with violating a protection order, falsification, and attempting to solicit improper compensation. Daly was later charged on July 30, 2019, in Case No. 2019-CRB-734E with violating a protection order by possessing a firearm after having been served with the ex parte protection order. Although Daly had a concealed carry permit, the ex parte protection order had prohibited him from carrying a firearm. Christine Kreuger, a detective for the Riverside Police Department at the time, signed each of the criminal complaints. Slyman acted as the prosecutor for these cases.

{¶ 13} According to Daly, on September 13, 2019, Slyman informed Daly during plea negotiations that "he got it from the 'Top Brass' at the Riverside Police Department that he had to have a guilty plea." Complaint p. 8; Daly Depo. 227-228. After Daly rejected a plea offer involving a guilty plea, Slyman offered Daly a no-contest plea "and in return we don't take this to the media." Complaint p. 8; Daly Depo. 229. Daly then entered a no contest plea to the violation of a protection order offense in Case No. 2019-CRB-734E in exchange for dismissal of the three charges in Case No. 2019-CRB-608E.

The magistrate accepted Daly's no contest plea, found him guilty, and recommended a sentence. The trial court adopted the magistrate's finding of guilt, but it did not address the sentence. Daly filed a notice of appeal. We determined that the trial court's judgment was not a final appealable order and dismissed it for lack of jurisdiction. The trial court then entered final judgment on March 12, 2020, and Daly again appealed.

{¶ 14} The same day that Daly had entered his no contest plea, he filed a petition with the trial court to seal his records as to the three dismissed charges in Case No. 2019-CRB-608E. Although the court granted Daly's motion, it did so prematurely and without a hearing. Certo, a prosecutor for the City of Riverside, filed a motion on behalf of the State to vacate the sealing order, which the trial court sustained on February 12, 2020. Daly also appealed this decision. We consolidated the appeals from the judgment in Case No. 2019-CRB-734E and the February 12, 2020 order vacating the trial court's prior decision to seal the records in Case No. 2019-CRB-608E. Certo represented the City of Riverside on appeal.

{¶ 15} On March 19, 2021, we affirmed the trial court's decision in Case No. 2019-CRB-608E vacating its prior order to seal the records. *State v. Daly*, 2021-Ohio-873 (2d Dist.). However, we concluded that the complaint in Case No. 2019-CRB-734E did not appear to be properly signed and sworn. Because we were unable to determine from the record if there was a different complaint involved, we remanded Case No. 2019-CRB-734E for the trial court to determine if there was a properly signed and notarized complaint. *Id.* at ¶ 14. S.H. died sometime during the pendency of that appeal.

{¶ 16} Following our March 19, 2021 decision, Daly emailed Certo requesting the

status of the payment of the appellate court costs, presumably related to Case No. 2019-CRB-734E. Daly indicated in the email that the costs needed to be paid, or he would turn the matter over to three major collection bureaus. Daly Depo. at 206-207. Certo responded and indicated the payment request had been forwarded to the City of Riverside. On May 11, 2021, Daly received a call from a Dayton Police Department detective based on a complaint from Certo that Daly's email had told Certo to pay the court costs or that Daly would report Certo personally to collections. No charges resulted from Certo's complaint and no further contact was made by the detective.

{¶ 17} Following our remand of Case No. 2019-CRB-734E, the trial court did not address whether the complaint filed on July 30, 2019, had been properly sworn; rather, it permitted the State to amend the complaint with a newly signed and sworn amended complaint and then reaffirmed its previously imposed sentence. Daly appealed. Certo again represented the State on appeal. We concluded that the improper complaint had been a jurisdictional defect that could not be remedied by a motion to amend the complaint. Accordingly, we reversed Daly's conviction and remanded for the trial court to file an order dismissing the case. Certo's involvement in Daly's case seems to have ended with the appellate filings made in Daly's appeal. Our opinion was rendered on March 4, 2022. Although the record in this appeal does not show the date on which the trial court dismissed the charges following our remand, the parties do not appear to dispute that Case No. 2019-CRB-734E was dismissed on March 23, 2022.

{¶ 18} On March 14, 2023, Daly filed the instant civil action. All the defendants filed answers to Daly's complaint and put forth several defenses, including those based

on the statutes of limitations and immunity.

{¶ 19} The City of Riverside, Certo, Slyman, Altick & Corwin, LPA, and Buckley King, LPA (collectively, "Riverside Defendants") filed a motion for summary judgment. In support of the motion, Riverside Defendants submitted Daly's deposition transcript, which included eight attached exhibits. Officer Perfetti filed a separate motion for summary judgment. In support of his motion, Officer Perfetti included his own affidavit and an affidavit of Detective Krueger, who had been involved in the investigation of Daly's cases. Krueger's affidavit identified two attached exhibits that included a full Cellebrite Physical Analyzer Report of S.H.'s cell phone and an extraction report of text messages between Daly and S.H. obtained from S.H.'s cell phone. Additionally, Officer Perfetti submitted a thumb drive containing audio and video recordings of some of his interactions with Daly on November 2, 2018. Collectively, the two motions for summary judgment argued that Daly's claims were precluded by the applicable statutes of limitations, failed to state a claim upon which relief could be granted, and/or were subject to immunity defenses.

{¶ 20} Daly filed a memorandum in opposition to the motions for summary judgment in which he referenced an "affidavit annexed," but he did not attach an affidavit or submit any other evidence. Daly's memorandum also referenced various documents, such as court exhibits and motions filed in the underlying criminal cases, which were not submitted to the trial court and are not part of our record. Daly also filed a motion to strike Krueger's affidavit "with the exception of her age, her employment, title, and her capacity as set forth within."

{¶ 21} On February 20, 2024, the trial court issued a decision granting summary

judgment to all the defendants. The trial court noted "that Plaintiff's memorandum opposing summary judgment is considered another re-argument of the claims alleged in his complaint. There are no affidavits or other facts presented by the Plaintiff." Decision (Feb. 20, 2024), p. 7. The court concluded, "while [Daly] presents conviction and advocacy, he does not submit facts. As such, the Court necessarily considers Defendants' facts as unchallenged." *Id.* The trial court dismissed Daly's claims for false arrest, false imprisonment, libel, slander, abuse of process, intentional infliction of emotional distress, and tortious interference as all having been filed beyond their respective statutes of limitations. For the additional claims listed in the complaint, "some of which are not recognized in Ohio and some of which seem to be restatements of recognized claims but using similar wording," the trial court dismissed those claims also as having been filed beyond their statute of limitations. Alternatively, the trial court granted summary judgment on all the claims against Officer Perfetti, City of Riverside, Certo, and Slyman on the basis of common law immunity and/or statutory immunity. Further, because all of the underlying claims were dismissed, the trial court also dismissed the derivative liability claims against City of Riverside, Altick and Corwin, and Buckley King.

{¶ 22} Daly timely appealed and now raises four assignments of error.

## II. First Assignment of Error

{¶ 23} The first assignment of error states verbatim as follows:

THE TRIAL COURT ERROR BY A PERFUNCTORY FINDING OF NO GENUINE ISSUE OF MATERIAL FACT AND DID NOT CONSIDER THE

SWORN AFFIDAVIT REFERRED TO SIX (6) TIMES OR THE SWORN AFFIDAVIT THAT WAS REFERRED TO AND RELIED UPON IN PLAINTIFF'S MOTION IN OPPOSITION TO SUMMARY JUDGMENT

{¶ 24} In this assignment of error, Daly contends that he submitted an affidavit in support of his memorandum in opposition to summary judgment and that the trial court erred by failing to consider his affidavit when granting defendants' motions for summary judgment. Daly attached to his appellate brief a copy of the affidavit he purportedly attached to his memorandum in opposition. In its decision granting summary judgment, however, the trial court stated that Daly had not presented any affidavit or other facts in his memorandum opposing summary judgment. Decision (Feb. 20, 2024), p. 7.

{¶ 25} This Court has reviewed the record and has not located a copy of the affidavit Daly contends was filed in the trial court. We cannot conclude the trial court erred by not considering Daly's affidavit, since there is no evidence in the record that Daly submitted it to the trial court. Inasmuch as the trial court did not have before it Daly's affidavit and could not have considered its contents, this court likewise may not consider it. An appellate court "cannot consider affidavits and other matters attached for the first time to an appellate brief which were not properly certified as part of the trial court's original record and submitted to the court of appeals." (Citations omitted.) *In re Forfeiture of Property of Rhodes*, 2013-Ohio-3046, ¶ 5 (2d Dist.). This is because "in reviewing the trial court's judgment, we are limited to the record before the trial court." *FIG 20, LLC FBO SEC PTY v. He*, 2024-Ohio-754, ¶ 14 (2d Dist.). "A reviewing court cannot add matter to the record before it, which was not a part of the trial court's

proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus. Accordingly, we will not consider the affidavit attached to Daly's appellate brief in deciding this appeal.

**{¶ 26}** The first assignment of error is overruled.

### III.    Summary Judgment Standard

**{¶ 27}** The remaining three assignments of error address the merits of the trial court's decision granting summary judgment. "Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party." *Johnson v. Clark Cty. Auditor*, 2020-Ohio-3201, ¶ 41 (2d Dist.), citing *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370 (1998). " 'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' " *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**{¶ 28}** "The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated." *Heard v. Dayton View Commons Homes*, 2018-Ohio-606, ¶ 7 (2d Dist.), citing *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115 (1988). "To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment." *Id.*, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). "The substantive law of the claim or claims being litigated determines whether a fact is

'material.' " *Townsend v. Kettering*, 2022-Ohio-2710, ¶ 16 (2d Dist.), citing *Perrin v. Cincinnati Ins. Co.*, 2020-Ohio-1405, ¶ 29 (2d Dist.).

**{¶ 29}** "The inquiry involved in a ruling on a motion for summary judgment necessarily implicates the substantive evidentiary standard of proof that would apply at a trial on the merits." *Miller v. Xenia*, 2002 WL 441386, *2 (2d Dist. Mar. 22, 2002), citing *Anderson* at 252. Therefore, the judge "must ask not whether it thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* "This means that there must be more than the mere existence of a scintilla of evidence in support of a plaintiff's position." *Id.*, citing *Anderson* at 252.

**{¶ 30}** Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show there is a genuine issue of material fact for trial. *Id.* The evidence, however, must be construed in favor of the nonmoving party. *Id.*

**{¶ 31}** "When reviewing the decision of a trial court granting or denying a party's motion for summary judgment, an appellate court applies a de novo standard of review." *Smathers v. Glass*, 2022-Ohio-4595, ¶ 30, citing *A.J.R. v. Lute*, 2020-Ohio-5168, ¶ 15. De novo review means that the appellate court uses the same standard that the trial court should have used and examines all the Civ.R. 56(C) evidence available in the record, without deference to the trial court's determinations, to resolve whether, as a matter of

law, summary judgment is appropriate. *Ward v. Bond*, 2015-Ohio-4297, ¶ 8 (2d Dist.). "We must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court are found to support it, even if the trial court failed to consider those grounds." *Cantrell v. Deitz*, 2013-Ohio-1204, ¶ 9 (10th Dist.), citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist. 1995).

{¶ 32} When we review a trial court's decision de novo, the appellant must identify the errors of the trial court with reference to the place in the record where each error is reflected. App.R. 16(A). "In order to support reversal of a judgment, the record must show affirmatively not only that error intervened but that such error was to the prejudice of the party seeking such reversal." *Smith v. Flesher*, 12 Ohio St.2d 107 (1967), paragraph one of the syllabus.

## IV.    Second Assignment of Error

{¶ 33} Daly's second assignment of error states:

THE TRIAL COURT ERROR IN GRANTING SUMMARY JUDGMENT WHEN THE COURT RELIED UPON INCORRECT CALCULATION OF THE STATUTE OF LIMITATIONS AS TO THE CAUSES OF ACTIONS

{¶ 34} The trial court dismissed the majority of Daly's claims on the basis that he filed the claims after the applicable statute of limitations had passed. In his appellate brief, like his memorandum in opposition to the defendants' motions for summary judgment, Daly does not identify separate dates of accrual for any of his alleged claims. Rather, Daly argues that the trial court erred in calculating the statute of limitations

because "the accrual date for the torts could not have begun until after the reversal of the underlying case." Appellant's Brief, p. 14.

{¶ 35} "Generally, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed." *Norgard v. Brush Wellman, Inc.*, 2002-Ohio-2007, ¶ 8, citing *Collins v. Sotka*, 81 Ohio St.3d 506, 507 (1998). "[A] cause of action only arises for purposes of commencing the running of the statute of limitations period when the plaintiff is aware, or should be aware, that he has been injured." *Bryant v. Doe*, 50 Ohio App.3d 19, 22 (2d Dist. 1988), citing *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84 (1983), paragraph two of the syllabus.

{¶ 36} Pursuant to R.C. 2305.03(A), "unless a different limitation is prescribed by statute, a civil action may be commenced only within the period prescribed in sections 2305.04 to 2305.22 of the Revised Code. If interposed by proper plea by a party to an action mentioned in any of those sections, lapse of time shall be a bar to the action." R.C. 2305.11(A) provides that "[a]n action for libel, slander, malicious prosecution, or false imprisonment . . . shall be commenced within one year after the cause of action accrued . . . ."

{¶ 37} Daly argues that none of his causes of action accrued until after the dismissal of the underlying criminal case, which he states occurred on March 23, 2022. Daly relies solely on *Heck v. Humphrey*, 512 U.S. 477 (1994), to support his position. We conclude that *Heck* does not apply to extend the accrual date until the dismissal of Daly's criminal case for his claims.

{¶ 38} In *Heck*, a man convicted of voluntary manslaughter in Indiana state court

sued prosecutors and a police investigator in federal court for allegedly "engag[ing] in an 'unlawful, unreasonable, and arbitrary investigation' leading to [his] arrest; 'knowingly destroy[ing]' evidence 'which was exculpatory in nature and could have proved [his] innocence'; and caus[ing] 'an illegal and unlawful voice identification procedure' to be used at [his] trial." *Id.* at 478-479. Heck filed suit under 42 U.S.C. 1983, raising claims that, if true, would have established the invalidity of his conviction. He did not seek injunctive relief or request his release, but he sought compensatory and punitive monetary damages, among other things. Notably, at the time Heck filed his federal civil suit, the appeal of his criminal conviction in the state court was still pending.

{¶ 39} The District Court dismissed Heck's Section 1983 complaint on the grounds that, as Heck was challenging the legality of his conviction, where success would require his release, the suit had to be classified as a habeas corpus action and dismissed because Heck had failed to exhaust his state court remedies, as required for habeas corpus cases. *Id.* at 479-480. The Seventh Circuit affirmed the judgment and approved the reasoning of the District Court. *Id.* The United States Supreme Court accepted certiorari.

{¶ 40} The decision of the Supreme Court centered around "the intersection of the two most fertile sources of federal-court prisoner litigation," 42 U.S.C. 1983 and the federal habeas corpus statute. *Id.* at 480. At issue was whether Heck could file his Section 1983 claim while his appeals were pending, because a successful resolution of the civil suit in his favor would have resulted in reversal of his criminal conviction. The Supreme Court concluded that Heck did not yet have a cognizable Section 1983 claim

and that the lower court had properly dismissed the action.   *Id.* at 489-490.

{¶ 41} In reaching its decision, the Supreme Court equated Heck's claims with the common law cause of action for malicious prosecution.   *Id.* at 484.   "One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."   (Citation omitted.)   *Id.*   The Court held that, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."   *Id.* at 486-487.   Therefore, where a plaintiff seeks damages in a Section 1983 suit, the trial court "must consider whether the judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."   *Id.* at 487.   In such cases, the statute of limitations does not begin to run until "the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated . . . ."   *McDonough v. Smith*, 588 U.S. 109, 119-20 (2019), citing *Heck* at 486-487.   On the other hand, if the trial court "determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."   (Emphasis in original.)   *Heck* at 487.   As the Court

explained, "Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." (Citation omitted.) *Id.* at 489-490.

{¶ 42} Subsequent to its decision in *Heck*, the United States Supreme Court decided *Wallace v. Kato*, 549 U.S. 384 (2007), which served, in some respects, to clarify the holding in *Heck*. That case likewise involved a civil lawsuit filed in federal court pursuant to 42 U.S.C. 1983.

{¶ 43} Following the dismissal of his criminal case, Wallace filed a Section 1983 lawsuit against several state actors seeking damages arising from his alleged unlawful arrest. *Wallace* at 387. The district court granted summary judgment to respondents, and the Seventh Circuit Court of Appeals affirmed, finding that the Section 1983 suit was barred by the statute of limitations. *Id.* Wallace argued in the United States Supreme Court that his Section 1983 claim could not have accrued until after his release from custody when the State dropped its charges against him, because his unlawful arrest "set the wheels in motion for his subsequent conviction and detention." *Id.* at 391-392. The Court disagreed, finding instead that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process," not when he is ultimately released. *Id.* at 397.

{¶ 44} The Court further explained that Wallace's reliance on *Heck* was misplaced.

The Court held that *Heck* did not delay the accrual of the plaintiff's false arrest claim because his claim became available "when he appeared before the examining magistrate and was bound over for trial." *Id.* at 391. At that time, "there was in existence no criminal conviction that the cause of action would impugn; indeed, there may not even have been an indictment." *Id.* at 393. In contrast, "the *Heck* rule for deferred accrual is called into play only when there exists 'a conviction or sentence that has not been . . . invalidated,' that is to say, an 'outstanding criminal judgment.' " (Emphasis in original.) *Id.* at 393. "If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit." (Citations omitted.) *Id.* at 394.

{¶ 45} Like the petitioner in *Wallace*, Daly contends that none of his causes of action began to accrue until after his final case was dismissed. The Supreme Court rejected Wallace's contention, and we likewise reject Daly's. The favorable-termination requirement set forth in *Heck* only applies when a plaintiff brings a Section 1983 lawsuit to obtain damages and " 'a judgment in favor of the plaintiff would necessarily imply' that his or her prior conviction or sentence was invalid." *McDonough*, 588 U.S. at 119, quoting *Heck* at 487. Daly did not allege a Section 1983 federal claim in his complaint, and *Heck* does not apply to Daly's state law claims.

{¶ 46} But even if *Heck* did apply, only Daly's cause of action alleging malicious prosecution included an element that the prosecution was terminated in his favor and, therefore, the date of accrual for that cause of action would have begun once the criminal case was terminated in his favor. None of the remaining causes of action would have

invalidated Daly's conviction had they been successful such that Daly would have had to wait until his conviction was dismissed in the trial court before filing suit. Accordingly, we cannot conclude that *Heck* extended the accrual date of all of Daly's other causes of action until his criminal case was dismissed in 2022.

**{¶ 47}** The second assignment of error is overruled.

## V. Third Assignment of Error

**{¶ 48}** Daly's third assignment of error states the following:

THE TRIAL COURT ERRORED IN GRANTING SUMMARY JUDGMENT ON ALL CAUSES OF ACTION WHEN DEFENDANT ONLY PUT FORTH SOME EVIDENTIARY MATERIALS AS TO SOME CAUSES OF ACTION AND INSUFFICIENTLY PER *DRESHER*, *id.*

**{¶ 49}** In this assignment of error, Daly insists that the trial court erred in granting summary judgment on all his claims because the defendants failed to specifically identify documentary evidence in support of their motions to meet their burden under *Dresher,* 75 Ohio St.3d 280. We do not agree.

**{¶ 50}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion [for summary judgment], and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Id.* at 292. "[A] moving party does not discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case." *Id.* at 293. However, "summary judgment may be rendered where *the pleadings* and the arguments of the party

seeking summary judgment clearly establish that the nonmoving party has no legally cognizable cause of action." (Emphasis in original.) *Id.* at 297-298.

{¶ 51} In addition to relying on the complaint and their answer, Riverside Defendants supported their motion for summary judgment with Daly's deposition transcript and eight attached exhibits, all of which were identified during the deposition. The exhibits included a copy of Daly's written statement provided on November 2, 2018, to Officer Perfetti; a certified copy of the ex parte protection order issued on October 31, 2018; a still photo of Daly at the police station on November 2, 2018, showing him holding a copy of the ex parte protection order; a copy of the Riverside Police Department police report; a copy of Daly's civil complaint in the case sub judice; a certified copy of an entry and order of the Municipal Court of Montgomery County in Case No. 2019-CRB-608E; a copy of the July 30, 2019 complaint filed in Municipal Court of Montgomery County Case No. 2019-CRB-734; and the March 19, 2021 final entry filed by this court in *Daly*, 2021-Ohio-873 (2d Dist.). In support of his separate motion for summary judgment, Officer Perfetti submitted his own affidavit and an affidavit of Christine Krueger, a former detective with the Riverside Police Department, who had been involved in the investigation of Daly's cases and filed the criminal complaints against Daly. Kruger's affidavit identified two attached exhibits: a full Cellebrite Physical Analyzer Report of S.H.'s cell phone and an extraction report of text messages between Daly and S.H. obtained from S.H.'s cell phone. Additionally, Officer Perfetti submitted a thumb drive containing audio and video recordings of his interactions with Daly on November 2, 2018, which was identified in Daly's deposition as Exhibit B.

{¶ 52} Having reviewed the record de novo, we conclude that the defendants satisfied their burden of identifying specific facts in the record demonstrating their entitlement to summary judgment as to all of Daly's claims and that Daly failed to meet his reciprocal burden to set forth specific facts showing there was a genuine issue of material fact for trial. We will address the trial court's ruling in the context of each of Daly's claims.

### a. False Arrest and False Imprisonment

{¶ 53} Daly listed false arrest and false imprisonment in his first claim for relief against all the defendants and also included these two causes of action in the title of the second, third, and fourth claims. However, Daly did not allege any facts in support of his claims for false arrest and false imprisonment in the complaint. The defendants presented the only evidence to the trial court relating to Daly's bare assertions of false arrest and false imprisonment. In the transcript of Daly's deposition, Daly stated that he had never been physically arrested, but he had been served with a summons; according to Daly, the summons was equivalent to an arrest. Daly Depo. at 254. Additionally, following Daly's plea of no contest, the trial court ordered him to be fingerprinted at the police station. According to Daly's deposition testimony, when he appeared for fingerprinting, he was temporarily taken into custody to be fingerprinted and then released. *Id.* at 255-256. Daly stated that the first day he went to be fingerprinted, the police were unable to complete the task, and Daly had to return another day to be fingerprinted. Both the last service of summons and the fingerprinting occurred sometime in 2019. *Id.* at 256-257.

{¶ 54} " '[F]alse arrest and false imprisonment as causes of action are indistinguishable. The only distinction lies in the manner in which they arise.' " *Rogers v. Barbera*, 170 Ohio St. 241, 243 (1960), quoting 22 Am.Jur., False Imprisonment, § 2 and 3, at 353 (1939). "In its essential elements, a claim for false arrest is indistinguishable from a claim for false imprisonment in that each claim requires proof that one was intentionally confined within a limited area, for any appreciable time, against his will and without lawful justification." (Citations omitted.) *Evans v. Smith*, 97 Ohio App.3d 59, 70 (1st Dist. 1994). Because "false imprisonment" includes "false arrest," the one-year statute of limitations provided in R.C. 2305.11(A) applies to both causes of action. (Citations omitted.) *Mayes v. Columbus*, 105 Ohio App.3d 728, 746 (10th Dist. 1995). "A cause of action for false arrest accrues on the day of the complainant's arrest." *Aaron v. Venator Group*, 2002 WL 192098, *2 (6th Dist. Feb. 8, 2002), citing *Mayes* at 746. A claim for false imprisonment, on the other hand, accrues when the alleged false imprisonment ends. *Cummins v. Madison Corr. Inst.,* 2011-Ohio-1608, ¶ 8 (10th Dist.), citing *Robinson v. Dept. of Rehab. & Corr.*, 2011-Ohio-713, ¶ 14 (10th Dist.).

{¶ 55} Daly contends that the cause of action for these claims did not arise until after the dismissal of his final case based on the United States Supreme Court's decision in *Heck,* 512 U.S. 477. We explained above why this contention is incorrect. Further, Ohio courts have explicitly rejected the contention that a cause of action for false arrest does not accrue until the applicant was acquitted. *Reagan v. City of Alliance*, 1987 WL 11071, *1 (5th Dist. May 4, 1987) (the statute of limitations begins to run for an action for false arrest or false imprisonment at the time of arrest because the action is not linked to

the outcome of the criminal proceeding and all operative facts are known at the time of arrest); *Petty v. Kroger Food and Pharmacy*, 2007-Ohio-5098, ¶ 18 (10th Dist.) (rejecting appellant's argument that a cause of action for false arrest accrues only upon termination of the underlying criminal proceedings).

{¶ 56} It is at best doubtful whether Daly's deposition testimony supported any of the necessary elements of his false imprisonment and false arrest causes of action. Regardless, these claims were barred by the statute of limitations, and defendants were entitled to summary judgment. According to Daly's deposition testimony, he was "arrested" on the summons and detained for fingerprinting sometime in 2019. The complaint was filed in 2023. Construing the evidence most strongly in favor of the nonmoving party, the trial court correctly concluded that Daly's false arrest and false imprisonment claims were filed well outside the one-year statute of limitations. Therefore, the trial court did not err by granting summary judgment in favor of all the defendants with regard to these claims.

### b. Defamation - Libel and Slander

{¶ 57} "Defamation is defined as a false publication which injures a person's reputation." *Dale v. Ohio Civ. Serv. Emps. Assn.*, 57 Ohio St.3d 112, 117 (1991), citing *Cleveland Leader Printing Co. v. Nethersole*, 84 Ohio St. 118 (1911). Defamation includes both libel and slander. "Slander generally refers to spoken defamatory words while libel refers to written or printed defamatory words." *Matikas v. Univ. of Dayton*, 2003-Ohio-1852, ¶ 27 (2d Dist.), citing *Lawson v. AK Steel Corp.*, 121 Ohio App.3d 251, 256 (12th Dist. 1997). "Ohio has held that the statute of limitations for defamation, be it

libel or slander, begins to run at the time words are written or spoken, not when the plaintiff became aware of them." (Citations omitted.) *Singh v. ABA Pub./Am. Bar Assn.*, 2003-Ohio-2314, ¶ 22 (10th Dist.). Actions for libel and slander must be commenced within one year after the cause of action accrued. R.C. 2305.11(A).

{¶ 58} Recently, the Ohio Supreme Court identified an exception that may extend the time for when a cause of action for libel accrues. In cases where the "publication of the libelous statements was secretive, concealed, or otherwise inherently unknowable to the plaintiff due to the nature of the publication," the discovery rule applies to extend the time of accrual to when the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, that he or she was injured by the wrongful conduct of the defendant. *Weidman v. Hildebrant*, 2024-Ohio-2931, ¶ 1, ¶ 14. This exception does not apply in this case, however, as Daly was aware of all the purported libelous and/or slanderous statements made by the defendants close in time to their alleged publications.

{¶ 59} As Riverside Defendants pointed out, Daly's complaint and deposition testimony alleged that all the defamatory statements made by Certo occurred on or before May 2021. Complaint p. 5-7; Daly Depo. at 275-276. Similarly, based on Daly's complaint and deposition testimony, Slyman's defamatory statements allegedly were made during the course of prosecuting Daly's cases in the municipal court. The last alleged defamatory statement made by Slyman occurred on January 6, 2020. Complaint p. 7-10; Daly Depo. at 201, 245-246.

{¶ 60} Daly did not identify in his complaint any defamatory statements allegedly made by Officer Perfetti. According to his deposition testimony, however, Daly claimed

Officer Perfetti made defamatory statements during the November 2, 2018 investigation and in his police report, which was completed on November 3, 2018. Daly Depo. at 141-142. Daly also believed that Officer Perfetti had had conversations with Certo and Slyman during the course of the underlying criminal prosecution about Daly's inappropriate relationship with S.H. *Id.* at 117-124. Additionally, Daly testified about alleged statements made by Officer Perfetti when he arrested an unidentified individual. According to Daly, when the unidentified person informed Officer Perfetti he was going to hire Daly, Officer Perfetti indicated that Daly had pending criminal cases and told the unidentified person that Daly was "screwing this girl," meaning S.H. *Id.* Considering that the underlying criminal cases were concluded at the end of 2019 and S.H. died sometime before we issued our decision in *Daly* on March 19, 2021, Perfetti's purported statements would have been made before March 19, 2021, which was more than one year prior to the filing of Daly's complaint.

**{¶ 61}** Daly failed to point to any evidence in his memorandum opposing summary judgment that created a genuine issue of material fact as to whether his defamation claims against Certo, Slyman, or Officer Perfetti accrued within one year of March 14, 2023. Construing the evidence most strongly in favor of the nonmoving party, one can only conclude that Daly's defamation claims involving Certo, Slyman, and Officer Perfetti were filed beyond the statute of limitations. Because the statute of limitations had expired on Daly's defamation claims involving Certo, Slyman, and Officer Perfetti, any potential defamation claims against the remaining defendants under the theory of respondeat superior were also extinguished by operation of law. *Natl. Union Fire Ins. Co. of*

*Pittsburgh, PA v. Wuerth*, 2009-Ohio-3601, ¶ 22-24 (a principal is vicariously liable only when an agent could be held directly liable). Accordingly, the trial court did not err by granting summary judgment in favor of all the defendants on Daly's defamation claims.

### c. Abuse of Process

{¶ 62} "The tort of abuse of process arises when one maliciously misuses legal process to accomplish some purpose not warranted by law." *Clermont Environmental Reclamation Co. v. Hancock*, 16 Ohio App.3d 9, 11 (12th Dist. 1984), citing 1 Am.Jur.2d, Abuse of Process, § 1, at 250 (1962). "In order to establish a claim of abuse of process, a plaintiff must satisfy three elements: '(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process.' " *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264, 270 (1996), quoting *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 298 (1994). There is no liability for abuse of process when " 'the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.' " *Yaklevich* at 298, fn. 2, quoting Prosser & Keeton, *The Law of Torts*, § 121, at 898 (5th Ed. 1984).

{¶ 63} "The gist of a claim for malicious prosecution, on the other hand, is the employment of process for its ostensible purpose, but without regard for probable cause; *i.e.*, the use of legal process for the mere purpose of vexation or injury." *Hancock* at 11, citing 52 Am.Jur.2d, Malicious Prosecution, § 1, at 187 (1970). "Malicious prosecution will generally lie where a lawsuit is begun in malice, without probable cause to believe it

can succeed, and which finally ends in failure." *Id.* Accordingly, "unlike malicious prosecution, 'termination of the prosecution in favor of the accused' is *not* a necessary element to establish an abuse-of-process claim." (Emphasis in original.) *Read v. Fairview Park*, 146 Ohio App.3d 15, 18 (8th Dist. 2001). An abuse-of-process claim "accrues on the date of the allegedly tortious conduct." *Id.* at 19. The claim is not tolled until the State dismisses the underlying criminal action against the plaintiff. *Id.* *Accord Tri-State Computer Exchange, Inc. v. Burt*, 2003-Ohio-3197, ¶ 18 (1st Dist.).

{¶ 64} "The key consideration in a malicious civil prosecution action is whether probable cause was present initially to bring the previous suit, whereas the key consideration in an abuse of process action is whether an improper purpose was sought to be achieved by the use of a lawfully brought previous action." *Yaklevich* at 300. "In an abuse of process case, '[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.' " *Robb* at 271, quoting Prosser & Keeton, *The Law of Torts*, §121, at 898.

{¶ 65} Daly initially asserted the claim of abuse of process against both Certo and Slyman in his complaint, yet during his deposition he acknowledged that the abuse of process claim did not apply to Slyman. Daly Depo. at 258-259. As for the claim against Certo, Daly alleged that Certo had abused the process by having Daly return to Ohio for hearings in the underlying criminal case and then requesting a continuance. *Id.* This occurred once or twice prior to January 6, 2020. While no facts were alleged in the complaint involving Officer Perfetti that would have met the elements for an abuse of

process claim, Daly claimed in his deposition that Officer Perfetti had committed abuse of process on November 2, 2018. *Id.* at 125.

{¶ 66} The trial court granted summary judgment on Daly's abuse of process claim based on the expiration of the statute of limitations and, alternatively, because the defendants were entitled to immunity. The statute of limitations for an abuse of process claim is four years. *Yaklevich* at 300; R.C. 2305.09(D).

{¶ 67} The complaint did not alleged facts sufficient to state a claim for abuse of process against Officer Perfetti. Assuming there were sufficient allegations, however, the trial court correctly granted summary judgment on statute of limitations grounds. Daly conceded in his deposition that the facts underlying his abuse of process claim against Officer Perfetti occurred on November 2, 2018. Daly Depo. at 124-125. Because Daly did not file his complaint within the four-year statute of limitations, the trial court correctly granted summary judgment on this claim as it related to Officer Perfetti.

{¶ 68} Daly asserts that the trial court erred in granting summary judgment to Certo on his abuse of process claims because the trial court incorrectly found that the claim was filed outside of the statute of limitations and that Certo was entitled to immunity. We need not address the statute of limitations argument with regard to Certo because the trial court correctly found, in the alternative, that Certo was entitled to immunity.

{¶ 69} It is well-settled law in Ohio that prosecutors enjoy absolute immunity from civil suit for acts committed in their roles as judicial officers. *Willitzer v. McCloud*, 6 Ohio St.3d 447, 448-449 (1983). Prosecutors are entitled to absolute immunity for conduct "intimately associated with the judicial phase of the criminal process." *Imbler v.*

*Pachtman*, 424 U.S. 409, 430 (1976). Prosecutors are considered "quasi-judicial" officers and therefore are entitled to absolute immunity when their acts involve " 'initiating a prosecution and presenting the State's case.' " *Willitzer* at 449, quoting *Imbler* at 431.

{¶ 70} As the Riverside Defendants pointed out in their motion for summary judgment, the only conduct alleged by Daly to constitute abuse-of-process by Certo was when Certo, acting in his official capacity as a prosecutor, requested one or two continuances of court hearings in the criminal case. Daly Depo. at 258-259. There is no question that Certo, as the prosecuting attorney, was acting as a quasi-judicial officer under these circumstances. The act of requesting a continuance with the trial court qualifies as an act "intimately associated" with the "judicial phase" of a particular proceeding and is neither administrative nor investigative. Certo carried his burden on summary judgment to show that he was entitled to immunity, and Daly did not present specific operative facts to rebut these claims. Therefore, the trial court correctly granted summary judgment in favor of Certo on the basis of absolute immunity for this claim.

{¶ 71} Viewing the facts and construing the evidence in a light most favorable to Daly as the non-moving party, we conclude that Riverside Defendants and Officer Perfetti were entitled to summary judgment as a matter of law regarding Daly's claims for abuse of process.

### d. Intentional Infliction of Emotional Distress

{¶ 72} Intentional infliction of emotional distress ("IIED") is demonstrated where one "by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another. . . ." *Yeager v. Local Union 20*, 6 Ohio St.3d 369 (1983),

syllabus, *abrogated on other grounds by Welling v. Weinfeld*, 2007-Ohio-2451. To prevail on an IIED claim, "a plaintiff must prove: (1) that the defendant either intended to cause emotional distress, or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) that the defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered utterly intolerable in a civilized community; (3) that the defendant's actions proximately caused psychological injury to the plaintiff; and (4) that the plaintiff suffered serious emotional distress of a nature no reasonable person could be expected to endure." (Citations omitted.) *Rhoades v. Chase Bank*, 2010-Ohio-6537, ¶ 15. "Only the most extreme wrongs, which do great harm to the norms of a civilized society, will rise to the level of extreme and outrageous conduct." *Martcheva v. Dayton Bd. of Edn.*, 2021-Ohio-3524, ¶ 66 (2d Dist.), citing *Brown v. Denny*, 72 Ohio App.3d 417, 423 (2d Dist. 1997). "Liability for intentional infliction of emotional distress 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' " *Rogers v. Olt*, 2018-Ohio-2110, ¶ 26 (2d Dist.), quoting *Yeager* at 375.

{¶ 73} The Supreme Court of Ohio has described "serious emotional distress" as "emotional injury which is both severe and debilitating" and has held that it "may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks*, 6 Ohio St.3d 72, 78 (1983), citing *Rodrigues v. State*, 52 Haw. 156, 173 (1970). " 'It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has

been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.' " *Reamsnyder v. Jaskolski*, 10 Ohio St.3d 150, 153 (1984), quoting Restatement of the Law 2d, Torts, § 46, Comment d (1965). " 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Id.*, quoting Restatement of the Law 2d, Torts, § 46, Comment d (1965). "It is the act, rather than the result, that must be outrageous and extreme." *Georgin v. Georgin*, 2022-Ohio-4328, ¶ 38 (12th Dist.), citing *Scott v. Spearman*, 115 Ohio App.3d 52, 58 (5th Dist. 1996).

{¶ 74} IIED claims are generally subject to a four-year statute of limitations. *Yeager* at syllabus. However, when the essential character of an IIED claim consists of conduct that is, in substance, another tort, the statute of limitations for the other tort controls. *Weidman*, 2024-Ohio-2931, at ¶ 26-27; *Grover v. Bartsch*, 2006-Ohio-6115, ¶ 52 (2d Dist.). "Where a claim for intentional infliction of emotional distress is set forth under a separate count in a complaint, the applicable statute of limitations for the entire claim is determined by the essential character of the underlying tort action." (Citations omitted.) *Breno v. City of Mentor*, 2003-Ohio-4051, ¶ 10 (8th Dist.), *abrogated on other grounds by Foley v. Univ. of Dayton*, 2016-Ohio-7591.

{¶ 75} In his complaint, Daly listed an IIED claim under his first claim for relief but included no supporting facts. Daly did not allege in his complaint or present any evidence to ascertain that he had suffered the type of serious mental anguish required to establish an IIED claim. In their motion for summary judgment, Riverside Defendants

argued that Daly's IIED claim should fail because there was no evidence that any of the actions of the defendants went beyond all bounds of decency, that any of the defendants had an intent to cause him severe emotional distress, or that Daly had suffered severe emotional distress as a result of any actions of the defendants. In support of their motion, Riverside Defendants pointed to Daly's deposition testimony. Daly identified his being "arrested on false charges," as the basis of his IIED claim. Daly Depo. at 129. As a result of his "arrest," Daly claimed he had nightmares, "tremors, sweating, anxiety, panic, confusion, anger, apathy, depression," but he admitted that he did not seek any medical attention, and no physician had diagnosed him with a medical condition resulting from his arrest. *Id.* at 172-173.

{¶ 76} Officer Perfetti argued that the statute of limitations for this claim was one year and, therefore, Daly's claim was time barred. Officer Perfetti explained that because the basis of Daly's IIED claim was that Officer Perfetti's actions had led to Daly's being "arrested on false charges," then the IIED claim mirrored the tort of false arrest, which was subject to a one-year statute of limitations. Because the "arrest" occurred more than one year prior to the filing of Daly's complaint, the claim was barred by the statute of limitations.

{¶ 77} When Daly filed his memorandum in opposition to summary judgment, he did not direct the court to any evidence in support of his IIED claim. Rather, he argued that the statute of limitations did not begin to run until his final case was dismissed and, therefore, his complaint for this claim was timely.

{¶ 78} The alleged conduct underlying Daly's IIED claim was the same alleged

conduct underlying his false arrest claim. Because the substance of Daly's IIED claim was virtually identical to his false arrest claim, the statute of limitations associated with the false arrest claim controlled. *Weidman*, 2024-Ohio-2931, at ¶ 27. Daly alleged he was falsely arrested in 2019 and, therefore, his complaint for IIED was barred by the one-year statute of limitations.

{¶ 79} Even if the applicable statute of limitations had been four years, however, we would still find that summary judgment was appropriate for at least two reasons. First, Daly failed to plead that the mental anguish he suffered as a result of the defendants' actions was of a nature that no reasonable person should be expected to endure it. Consequently, there was no genuine issue of material fact for the IIED claim, and the defendants were entitled to judgment as a matter of law. *Malone v. Lowry*, 2007-Ohio-5665, ¶ 18 (2d Dist.). Second, "[a] plaintiff claiming severe and debilitating emotional distress must present some 'guarantee of genuineness' in support of his or her claim to prevent summary judgment in favor of the defendant." *Buckman-Peirson v. Brannon*, 2004-Ohio-6074, ¶ 40 (2d Dist.), citing *Paugh*, 6 Ohio St.3d at 76. While expert medical testimony may be a helpful and effective method of proving severe emotional distress, such evidence is not always necessary. Nevertheless, "a plaintiff in a case for intentional infliction of emotional distress must present some evidence beyond the plaintiff's own testimony that he or she has experienced emotional distress due to the defendant's actions." *Id.* at ¶ 56. "Summary judgment [on an IIED claim] is appropriate when the plaintiff presents no testimony from experts or third parties as to the emotional distress suffered and where the plaintiff does not seek medical or psychological treatment for the

alleged injuries." *Crable v. Nestle USA, Inc.*, 2006-Ohio-2887, ¶ 58 (8th Dist.), citing *Buckman-Peirson*; *Plikerd v. Mongeluzzo*, 73 Ohio App.3d 115 (3d Dist. 1992); *Sheets v. Rockwell Internatl. Corp.*, 68 Ohio App.3d 345 (10th Dist. 1990).

{¶ 80} Here, Daly did not submit any evidence from an expert or third party to substantiate his alleged serious emotional injury. On the contrary, Daly testified in his deposition that he had not sought out any medical treatment for his perceived symptoms and had no plans to do so. Daly Depo. at 173, 265. Because Daly failed to establish a genuine issue of material fact relating to the serious and debilitating nature of his alleged emotional injury, summary judgment was appropriate.

{¶ 81} Accordingly, the trial court did not err in granting summary judgment in favor of Riverside Defendants and Officer Perfetti on Daly's IIED claim.

### e. Tortious Interference

{¶ 82} In the first claim of his complaint, Daly listed "tortious interference" and "business tort." No facts were alleged in support of these claims. During his deposition, Daly identified the claim of "tortious interference" as "tortious interference with a contract." Daly Depo. at 130, 266. In describing the basis of the claim relating to Officer Perfetti, Daly stated that it was "[a]rresting me on false charges and – not him arresting me, but being in the group and being the match that started the fire, and having me falsely arrested on these charges." *Id.* at 130. As to the Riverside Defendants, Daly explained that the tortious interference with contracts claim was related to "oral contracts of representation that [he] would have gained from [his] client base that [he] didn't gain." *Id.* at 271. Daly asserted there was one unidentified individual who did not hire him and

was unable to identify any other individuals. *Id.* at 271-272. Daly alleged that the basis of the "business tort" claim, which he explained was "another word for tortious interference with contracts," was that the tortious interference affected his bottom line. Daly claimed that his business contracts were interfered with as a result of the false arrest and false charges because they affected his reputation. *Id.* at 130-131. Daly alleged that there was a "drop off in business," which he also attributed somewhat to the COVID pandemic. *Id.* at 272.

**{¶ 83}** "The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 14 (1995). "A claim for tortious interference with business relations differs from a claim for tortious interference with contract in that the former claim allows recovery for improper interference with prospective contractual relations." *Innovative Architectural Planners, Inc. v. Ohio Dept. of Admin. Servs.*, 2024-Ohio-824, ¶ 22 (10th Dist.), citing *Bansal v. Mt. Carmel Health Sys.*, 2011-Ohio-3827, ¶ 30 (10th Dist.). The elements of tortious interference with a contract include "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995).

**{¶ 84}** " 'The elements essential to recovery for a tortious interference with a

business relationship are: (1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom.' " *Kademian v. Marger*, 2012-Ohio-962, ¶ 93 (2d Dist.), quoting *Wolf v. McCullough-Hyde Mem. Hosp.*, 67 Ohio App.3d 349, 355 (12th Dist. 1990). "It does not require the breach of a contract; rather, it is enough to prove that a third party did not enter into or continue a business relationship with the plaintiff." *AEGIS, LLC v. Schlorman*, 2024-Ohio-3325, ¶ 20 (2d Dist.), citing *Gentile v. Turkoly*, 2017-Ohio-1018, ¶ 24 (7th Dist.).

{¶ 85} The applicable statute of limitations for a claim of tortious interference with a contract is generally four years after the cause of action accrued. R.C. 2305.09(D). Because Daly alleged that Officer Perfetti's conduct of "starting the fire," i.e., investigating Daly's complaint and writing a police report, was the act that facilitated the tortious interference, the trial court granted summary judgment based on the expiration of the statute of limitations. According to Officer Perfetti's affidavit, all of his conduct involved in the underlying criminal cases occurred on November 2 and 3, 2018, which was more than four years before Daly filed his complaint.

{¶ 86} Moreover, as the defendants pointed out in their motions for summary judgment, Daly did not establish all the necessary elements to prove tortious interference with a contractual relationship or a business relationship and, therefore, summary judgment was appropriate on that basis as well. According to Daly's deposition testimony, he never had a contract with an individual that he claimed was lost as a result of his "arrest" and prosecution. Rather, he argued there were oral contracts that he

would have gained but did not, i.e., prospective contracts. "[T]he element requiring the existence of a valid contract is the threshold issue in determining whether a tortious interference with a contract has occurred . . . ." *Sharp v. Clark*, 1992 WL 107849, *6 (2d Dist. May 20, 1992). Absent evidence of a contract, the first element of the tortious interference with a contract claim fails. *Ettayem v. Ramsey*, 2019-Ohio-675, ¶ 22 (10th Dist.). Because Daly's deposition testimony made it clear he had not had any contracts that were breached or terminated because of his "arrest" and prosecution, summary judgment as to all defendants was appropriate on Daly's claim of tortious interference with a contractual relationship.

{¶ 87} Furthermore, where a plaintiff fails to identify anyone with whom plaintiff had a business relationship or prospective contractual relationship that was terminated because of defendant's alleged intentional contractual interference, summary judgment is proper. *Marinelli v. Prete*, 2010-Ohio-2257, ¶ 41 (6th Dist.). As Riverside Defendants pointed out, Daly was unable to identify any specific business relationship that was affected. Daly Depo. at 271-272. At best, Daly mentioned an unnamed individual who he believed had not hired him solely as a result of comments allegedly made by Officer Perfetti. Daly was unable to identify who the prospective client was, what the contract would have entailed, or what the damages would have been. Moreover, "a statement from unknown sources . . . is inadmissible hearsay, and does not create issues of material fact." *Stillwell v. Xenia*, 2001 WL 127880, *6 (2d Dist. Feb. 16, 2001). Considering Daly failed to allege any facts or state any elements of this claim in his complaint, and the defendants affirmatively demonstrated that Daly's sole evidence did not create a genuine

issue of material fact, we conclude that summary judgment was appropriate on this alternative basis.   *See Cantrell*, 2013-Ohio-1204, at ¶ 9 (10th Dist.).

### f.  Other Claims

{¶ 88} The substance of Daly's claims is not apparent from the complaint due to his lack of compliance with Civ.R. 8(A) and (E).   Daly's complaint failed to identify any facts whatsoever to support his first claim for relief, which listed claims of false arrest, abuse of process, abuse of police powers, malicious prosecution, sham prosecution, false imprisonment, intentional infliction of mental distress, tortious interference, retaliatory conspiracy, business tort, damage to reputation, civil rights violations, a pattern of corrupt activities, "a pattern of abuse under," retaliatory action and conspiracy to damage him, intentional acts of reprisal, libel, slander, failure to properly supervise, failure to monitor its employee's acts, failure to properly supervise, and failure to control employees. Daly's remaining claims consisted of mostly conclusory statements and generally lacked clarity due to the dearth of factual allegations asserted.   As the trial court observed, some of Daly's claims listed in the complaint "are not recognized in Ohio," while others appeared to be "restatements of recognized claims but using similar wording."   Moreover, Daly's failure to allege the elements of all the claims that he raised in his complaint made it virtually impossible to identify the basis for the potential claims.   But for Daly's deposition testimony, most of his claims would have been impossible to decipher.

{¶ 89} When deciding a motion for summary judgment, the court must consider whether there are any genuine issues of material fact in dispute.   Both Riverside Defendants and Officer Perfetti argued in their motions for summary judgment that the

remaining claims were either not cognizable under Ohio law or there was insufficient evidence of disputed material facts in relation to the claims. There were no affidavits or other evidence presented by Daly after the defendants met their summary judgment burden that put any material facts in dispute.

{¶ 90} We have already addressed several specific claims that were listed in Daly's complaint. As for the remaining claims, Daly states in his appellate brief that these additional claims "go directly, at a minimum, to the necessary elements of a successful malicious prosecution claim . . . ." Appellant's Brief, p. 16. We agree with the trial court that some of the remaining "claims" are not recognized claims in Ohio and/or are duplicates. We also tend to agree with Daly that several of the remaining "claims" are part and parcel of the malicious prosecution claim and, therefore, fall under that claim rather than separate claims. We cannot conclude that Daly has adequately supported any other cognizable claim based on his complaint, deposition testimony, or other Civ.R. 56(C) evidence in the record. Accordingly, we conclude that the defendants were entitled to summary judgment on the remaining claims listed by Daly, not on statute of limitations grounds, but because there were no genuine issues of material fact relating to these claims separate and apart from the malicious prosecution claim.

### g. Malicious prosecution

{¶ 91} The trial court found that Daly's malicious prosecution claim was not barred by the statute of limitations. However, the trial court held that Certo, Slyman, Officer Perfetti, and the City of Riverside were entitled to immunity and granted their motions for summary judgment on that basis. Daly takes issue with the trial court's finding that

Slyman and Certo were entitled to immunity from the malicious prosecution claim. Because Daly's fourth assignment of error deals explicitly with Slyman's immunity, we will consider that issue under the fourth assignment of error. Daly does not specifically argue that either Officer Perfetti or the City of Riverside were not entitled to immunity. Rather, he argues generally that the defendants failed to satisfy their burden under *Dresher,* 75 Ohio St.3d 280, and, therefore, were not entitled to immunity. We note that Daly testified in his deposition that his malicious prosecution claim did not apply to either of the law firms. Daly Depo. at 262.

{¶ 92} "R.C. Chapter 2744, the Political Subdivision Tort Liability Act, sets forth a comprehensive statutory scheme for the tort liability of political subdivisions and their employees." *Supportive Solutions, L.L.C. v. Elec. Classroom of Tomorrow*, 2013-Ohio-2410, ¶ 11. Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a three-tiered analysis. *Lambert v. Clancy*, 2010-Ohio-1483, ¶ 8. "A general grant of immunity is provided within the first tier, which states that 'a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.' " *Id.*, quoting R.C. 2744.02(A)(1). The statutory definition of "governmental function" includes police and prosecutorial functions. R.C. 2744.01(C)(2)(a) and (f). "That immunity, however, is not absolute." *McConnell v. Dudley*, 2019-Ohio-4740, ¶ 21.

{¶ 93} "The second tier of the sovereign-immunity analysis involves determining

whether any of the five exceptions to immunity that are listed in R.C. 2744.02(B) apply to expose the political subdivision to liability." *Id.* at ¶ 22, citing *Pelletier v. Campbell*, 2018-Ohio-2121, ¶ 15. "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability." *Colbert v. Cleveland*, 2003-Ohio-3319, ¶ 9.

{¶ 94} Immunity is also given to employees of political subdivisions. R.C. 2744.03(A)(6). "For claims against individual employees, the three-tiered analysis used to determine whether a political subdivision is immune is not used." *Lambert* at ¶ 10, citing *Cramer v. Auglaize Acres*, 2007-Ohio-1946, ¶ 17. "R.C. 2744.03(A)(6) states that an employee is immune from liability unless the employee's actions or omissions are manifestly outside the scope of employment or the employee's official responsibilities, the employee's acts or omissions were malicious, in bad faith, or wanton or reckless, or liability is expressly imposed upon the employee by a section of the Revised Code." *Cramer* at ¶ 17.

{¶ 95} "Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson v. Massillon*, 2012-Ohio-5711, ¶ 32, citing *Tighe v. Diamond*, 149 Ohio St. 520, 527 (1948). "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is

great probability that harm will result." *Id.* at ¶ 33, citing *Hawkins v. Ivy*, 50 Ohio St.2d 114, 117-118 (1977). "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at ¶ 34, citing *Thompson v. McNeill*, 53 Ohio St.3d 102, 104-105 (1990). The standard of demonstrating wanton misconduct is high. *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356 (1994).

{¶ 96} R.C. 2744.03(A)(6) provides that this qualified immunity is "[i]n addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division." R.C. 2744.03(A)(7) states: "The political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant to such person, or a judge of a court of this state is entitled to any defense or immunity available at common law or established by the Revised Code." Thus, R.C. 2744.03(A)(7) preserves the absolute immunity available to prosecutors at common law.

{¶ 97} As noted previously, it is well-settled common law in Ohio that prosecutors enjoy absolute immunity from suit for acts committed in their roles as judicial officers. Prosecutors are considered "quasi-judicial" officers, and as such they are entitled to absolute immunity when their activities are "intimately associated with the judicial phase of the criminal process." *Willitzer*, 6 Ohio St.3d at 449, quoting *Imbler*, 424 U.S. at 430. "The decision to initiate, maintain, or dismiss criminal charges is at the core of the prosecutorial function." *McGruder v. Necaise*, 733 F.2d 1146, 1148 (5th Cir. 1984).

{¶ 98} "Whether a party is entitled to immunity is a question of law properly determined by the court prior to trial pursuant to a motion for summary judgment." *Pelletier*, 2018-Ohio-2121, at ¶ 12, citing *Conley v. Shearer*, 64 Ohio St.3d 284, 292 (1992).

### i. City of Riverside Immunity

{¶ 99} The City of Riverside argued that it was entitled to summary judgment on all of Daly's claims because it was immune from liability under R.C. Chapter 2744, not just for the malicious prosecution claim but for all of Daly's alleged claims. The City of Riverside asserted that it was immune from liability under R.C. 2744.02(A)(1) for acts committed while performing a governmental function, and none of the exceptions to immunity under R.C. 2744.02(B) existed. We agree.

{¶ 100} There is no dispute that the City of Riverside is a political subdivision and therefore able to assert immunity. R.C. 2744.02(A)(1). Daly's complaint alleged that the City of Riverside was liable in tort based on the theory of respondeat superior for the actions of Certo, Slyman, and Officer Perfetti. The City of Riverside's alleged liability was entirely based on the actions of its employees as prosecutors and police officers while performing a governmental function (R.C. 2744.01(C)(2)(a) and (C)(2)(f), respectively). Thus, the City of Riverside was immune from liability unless an exception to immunity set forth in R.C. 2744.02(B) existed.

{¶ 101} "The five exceptions to immunity are: (1) the negligent operation of a motor vehicle by an employee of the political subdivision, (2) negligent performance of acts by employees of the political subdivision with respect to 'proprietary functions' of the political

subdivision, (3) negligent failure of the political subdivision to keep public roads in good repair, (4) negligent creation or failure to remove physical defects in buildings and grounds; and (5) where civil liability is expressly imposed upon a political subdivision by another section of the Revised Code." *Reno v. Centerville*, 2004-Ohio-781, ¶ 50 (2d Dist.). "A political subdivision may not be held liable under a theory of respondeat superior unless one of the exceptions to the sovereign immunity listed in R.C. 2744.02(B) applies." *Id.* at ¶ 53, citing *Lee v. Cleveland*, 2003-Ohio-742 (8th Dist.). Additionally, "courts have generally held that because R.C. 2744.02(B) includes no specific exceptions for intentional torts, political subdivisions are immune from intentional tort claims." *Henderson v. Euclid*, 2015-Ohio-15, ¶ 62 (8th Dist.) (listing cases).

{¶ 102} In his memorandum in opposition to summary judgment, Daly argued that the City of Riverside was not immune from liability because the City had acquiesced in allowing Slyman to act as prosecutor on Daly's case. This assertion does not fall within any of the five exceptions contained in R.C. 2744.02(B). "[A] political subdivision's immunity can be removed only through one of the enumerated exceptions found in R.C. 2744.02(B)(1) through (5)." *O'Toole v. Denihan*, 2008-Ohio-2574, ¶ 71, citing *Colbert*, 2003-Ohio-3319, at ¶ 8.

{¶ 103} Daly has not pointed to the applicability of any of the five exceptions. Viewing the evidence in the light most favorable to Daly, we conclude that none of the exceptions to immunity found in R.C. 2744.02(B) were applicable under the facts of this case. Therefore, pursuant to R.C. 2744.02(A)(1), the City of Riverside was immune from liability for any alleged damage arising from the investigation, prosecution, and detention

of Daly, and it was entitled to summary judgment as a matter of law.

### ii. Certo's Immunity

{¶ 104} Daly complains on appeal that Certo did not identify any evidence in the record to support his entitlement to immunity in his motion for summary judgment. Furthermore, Daly argues that Certo's conduct "alleged in the complaint of using his position of authority in order to gain favor from the city of Dayton police and influence them in bringing charges against Daly, is definitely not conduct of a 'governmental function' that he is engaging in and it is clearly outside the scope of an employee for the municipality." Appellant's Brief at p. 17.

{¶ 105} In its motion for summary judgment, Riverside Defendants cited a portion of Daly's deposition testimony that explained the sole basis for his malicious prosecution claim against Certo. Riverside Defendants' Motion for Summary Judgment (Jan. 2, 2024), p. 2. Daly stated that "Certo had no probable cause to prosecute this matter" and "continued to try to have the case unsealed for no reason." Daly Depo. at 259-260. Further, Daly stated that Certo had attempted to amend the complaint in Case No. 2019-CRB-734E to have Daly booked and fingerprinted again, "things that you don't do as a prosecutor." *Id.* Riverside Defendants argued that Certo was entitled to absolute immunity pursuant to both statutory and common law authority. Riverside Defendants' Motion for Summary Judgment (Jan. 2, 2024), p. 7-8.

{¶ 106} Both Daly's complaint and deposition testimony clearly established that Certo was the acting prosecutor for the City of Riverside at all relevant times. As the prosecutor, Certo's decisions to initiate and maintain the prosecution against Daly were

"intimately associated with the judicial phase of the criminal process." *See Willitzer*, 6 Ohio St.3d at 449. Thus, Certo had absolute immunity in connection with those decisions. We also conclude that Certo's decision to pursue the unsealing of Case No. 2019-CRB-608E fell within the bounds of absolute immunity. Pursuant to the sealing statutes, it is within the discretion of the prosecutor to object to an application to seal a record. R.C. 2953.33(B)(1). Furthermore, Certo successfully argued on appeal that the trial court had correctly vacated its order sealing the records in Case No. 2019-CRB-608E. *Daly*, 2021-Ohio-873, at ¶ 17 (2d Dist.). Finally, we conclude that Certo was also entitled to immunity when he attempted to amend the complaint following the remand of Case No. 2019-CRB-734E. Although we ultimately disagreed with Certo's arguments on appeal, he was performing his actions in a prosecutorial function, i.e., filing motions and submitting briefs as an advocate on behalf of the City of Riverside. " '[P]rosecutors enjoy absolute immunity from suit for acts committed in their role as judicial officers.' " *Rieger v. Marsh*, 2011-Ohio-6808, ¶ 35 (2d Dist.), quoting *Hawk v. Am. Elec. Power Co.*, 2004-Ohio-7042, ¶ 8 (3d Dist.).

{¶ 107} Daly's sole argument on appeal opposing Certo's immunity is that Certo acted outside the scope of his employment when he contacted the Dayton Police detective about Daly's April 24, 2021 email. Daly acknowledged that he had emailed Certo regarding an outstanding payment for the court of appeals fees. Daly Depo. at 205-207. The police detective Daly spoke with indicated that Certo had perceived Daly's email as a threat to report him personally if he did not pay Daly's appellate costs. Daly admitted that he sent the email to Certo stating that "you have to pay these court costs or

I'm turning this over to collection, or three major collection bureaus." *Id.* Daly explained that he had contacted Certo because Certo was the attorney for the City of Riverside, the party that owed the money, but stated that he had not expected Certo to personally pay the costs. *Id.*

{¶ 108} Evidence of Certo's complaint to the Dayton Police about Daly's email did not fall within the confines of Daly's malicious prosecution claims against Certo because no prosecution was instituted regarding Certo's complaint to the Dayton Police. Further, we cannot conclude under these circumstances that this action demonstrated willful or wanton misconduct so as to remove Certo's statutory immunity. Nor was it sufficient to demonstrate that Certo had acted maliciously, in bad faith, wantonly, or recklessly to remove his statutory immunity under R.C. 2744.03(A)(6). Because Certo was entitled to immunity, the trial court properly granted his motion for summary judgment on this claim.

### iii. Officer Perfetti's Immunity

{¶ 109} Daly does not argue on appeal that Officer Perfetti was not entitled to immunity. Rather, he summarily argues that the trial court erred in granting summary judgment to all of the defendants.

{¶ 110} "Law enforcement officers are political subdivision employees." *Hoffman v. Gallia Cty. Sheriff's Office,* 2017-Ohio-9192, ¶ 37 (4th Dist.). Under R.C. 2744.03(A)(6)(b), political subdivision employees are immune from liability unless their acts or omissions are done "with malicious purpose, in bad faith, or in a wanton or reckless manner." The evidence in this case demonstrated that Officer Perfetti was the responding officer who took Daly's complaint against S.H., which also resulted in Daly's

subsequent criminal prosecution for violation of a protection order. Perfetti Affidavit. The investigation itself was initiated by Daly, who wished to file a complaint against S.H. for an alleged theft of a necklace. *Id.* Officer Perfetti contacted S.H. to confront her about Daly's accusations and she provided him with the allegedly stolen necklace. *Id.* She also showed Officer Perfetti several photographs that seemed to corroborate that Daly had gifted her the necklace rather than her stealing it. *Id.* Officer Perfetti then met with Daly and returned the necklace to him. *Id.* Following the return of the necklace, Daly offered Officer Perfetti a coupon for one free legal service, a knife, and nude photos of S.H., all of which Perfetti rejected. *Id.* Daly also informed Officer Perfetti that he was carrying a gun, which was in violation of an ex parte civil protection order. *Id.*; Daly Depo. Ex. A & C. Officer Perfetti's only involvement occurred when he investigated the complaint against S.H. on November 2, 2018, informed his superiors of the investigation, and submitted a police report the following day. *Id.* Officer Perfetti conducted no further investigation or interviews of any additional witnesses. *Id.* Officer Perfetti was not involved in the decision to prosecute Daly or the prosecution itself. *Id.* Officer Perfetti did not arrest Daly and had no further involvement in the case. *Id.* Daly did not point to any Civ.R. 56(C) materials in opposition to summary judgment demonstrating that Officer Perfetti acted with malicious purpose, in bad faith, or in a wanton or reckless manner or acted outside the scope of his employment.

{¶ 111} Viewing the record in the light most favorable to Daly, we conclude that there were no genuine issues of material fact and that Officer Perfetti was entitled to judgment as a matter of law because there was no evidence that he acted with malicious

purpose, in bad faith, or in a wanton or reckless manner. Officer Perfetti was therefore entitled to immunity under R.C. 2744.03(A)(6)(b) and to summary judgment.

### h. Vicarious Liability

{¶ 112} The trial court concluded that there was no basis for any derivative liability against Altick & Corwin or Buckley King because Certo was entitled to summary judgment on all claims alleged against him. Daly has not challenged this aspect of the trial court's decision on appeal. Nevertheless, we agree with the trial court.

{¶ 113} Daly's sole theory of liability against the law firms was based upon the doctrine of respondeat superior. "This doctrine of liability depends on the existence of control by a principal (or master) over an agent (or servant), terms that [the Ohio Supreme Court has] used interchangeably." *Wuerth*, 2009-Ohio-3601, at ¶ 20, citing *Hanson v. Kynast*, 24 Ohio St.3d 171, 173 (1986). "Although a party injured by an agent may sue the principal, the agent, or both, a principal is vicariously liable only when an agent could be held directly liable." *Id*. at ¶ 22. "If there is no liability assigned to the agent, it logically follows that there can be no liability imposed upon the principal for the agent's actions." *Comer v. Risko*, 2005-Ohio-4559, ¶ 20, citing *Losito v. Kruse*, 136 Ohio St. 18 (1940), and *Herron v. Youngstown*, 136 Ohio St. 190 (1940). Because Certo was entitled to summary judgment on all the claims alleged against him, the law firms were likewise entitled to summary judgment on Daly's vicarious liability claims.

{¶ 114} Having found that all the defendants were entitled to summary judgment on all of the claims discussed above, Daly's third assignment of error is overruled.

### VI. Fourth Assignment of Error

{¶ 115} In his final assignment of error, Daly makes the following argument:

THE TRIAL COURT ERRORED BY SUMMARILY AND WITHOUT ANY EVIDENTIARY MATERIAL LISTED IN CIV RULE 56(C) APPLIED IMMUNITY STATUS TO A FAUX PROSECUTOR WITH NO LEGAL BASIS

{¶ 116} Daly's arguments in his fourth assignment of error focus on the trial court's finding that Slyman was immune from liability on the claim of malicious prosecution because there was no evidence in the record that Slyman had been a lawfully appointed special prosecutor or employed by the City of Riverside.   According to Daly, Slyman was not entitled to immunity and summary judgment was improperly granted as to Daly's malicious prosecution claim against Slyman.   We disagree and conclude that Slyman was entitled to summary judgment on Daly's malicious prosecution claim based on immunity and the fact that probable cause existed.

{¶ 117} Daly's complaint alleged that on September 13, 2019, attorney Slyman appeared at the Municipal Court in Huber Heights, Ohio, and presented himself to Daly and the trial court as the duly appointed special prosecutor in the cases.   Slyman participated in all the court conferences and motions and made various plea offers to Daly during the pendency of the cases.   Slyman met with the complainant in the Montgomery County Jail[1] and ordered the Riverside Police Department to bring forth the fourth charge against Daly.[2]   Complaint p. 7-9.

{¶ 118} According to Daly's complaint, during plea discussions, Slyman stated that

---

[1] The "complainant" was later identified in Daly's deposition as S.H.

[2] The fourth charge was filed in Case No. 2019-CRB-734E on July 30, 2019.

the "Top Brass" of the Riverside Police Department had to have Daly enter a guilty plea on the charges, but Daly refused to plead guilty. Slyman then offered for Daly to plead no contest and "in return we don't take this to the media." Daly accepted the offer from Slyman and entered a no contest plea on September 13, 2019, to the separately charged violation of a protection order offense in Case No. 2019-CRB-734E in exchange for dismissal of the three charges in Case No. 2019-CRB-608E. Complaint at p. 8.

{¶ 119} Daly also alleged in his complaint that on December 5, 2019, Slyman had emerged from Certo's office at the Huber Heights courthouse and told Daly that "he was 'coming at [Daly] now' because [Daly] filed an appeal." Slyman stated "Ha, Ha, YOU DON'T HAVE A FINAL APPEALABLE Order, see you at sentencing." (Emphasis in original.) Daly testified in his deposition that these statements were made by Slyman while "still acting as a prosecutor in the case." Daly Depo. at 24-235. We note that following the initial notice of appeal in Case No. 2019-CRB-734E, this court determined that the trial court's judgment was not a final appealable order and dismissed the appeal for lack of jurisdiction.

{¶ 120} Slyman never provided any documentation to Daly as to his appointment as a special prosecutor. According to Daly, Slyman informed Daly that he should contact the City of Riverside manager Joshua Rausch even though Rausch was not the city manager at the time of Daly's prosecution by Slyman. Complaint at p. 7-10.

{¶ 121} Daly testified during his deposition that Slyman's statements about pleading guilty or going to the media and Slyman's statements on December 5, 2019, were indicative of malicious prosecution. Daly Depo. at 261-262. Daly also discussed

a motion filed by Certo on May 6, 2021, in the underlying criminal case that stated Certo denied having a conflict of interest with the case and "gave the case to someone else" to "more efficiently distribute his workload." *Id.* at 218-219.

**{¶ 122}** The trial court found that Slyman was entitled to immunity based on his role as a representative of the City of Riverside in prosecuting Daly. The trial court focused on Slyman's functions, which included interviewing witnesses, appearing in court as the City's representative, and discussing plea offers. Even if Slyman's actions were committed with only the acquiescence of the City, the trial court concluded this was enough to grant Slyman immunity for his actions. We agree with the trial court.

**{¶ 123}** Under R.C. 2744.03(A)(1), employees of a political subdivision are granted immunity in civil actions seeking to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function if the employee involved was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function. An "employee" is defined, in part, as "an officer, agent, employee, or servant, whether or not compensated or full-time or part-time, who is authorized to act and is acting within the scope of the officer's, agent's, employee's, or servant's employment for a political subdivision." R.C. 2744.01(B). R.C. 2938.13 provides that "[i]n any case prosecuted for violation of a municipal ordinance the village solicitor or city director of law, and for a statute, he or the prosecuting attorney, shall present the case for the municipal corporation and the state respectively, but either may delegate the responsibility to some other attorney in a proper case, or, if the defendant be unrepresented by counsel may

with leave of court, withdraw from the case." The statutory immunity provided to prosecutors under R.C. Chapter 2744 is in addition to the absolute immunity provided for by common law immunity. Absolute immunity is granted to prosecutors for claims arising out of their initiation of a prosecution and advocating the state's case but does not extend to merely investigative or administrative functions. *Imbler*, 424 U.S. at 431. Consequently, we look to " 'the functional nature of the activities' of which the plaintiff complains" to determine whether absolute immunity applies. *McGruder*, 733 F.2d at 1148 (5th Cir.), quoting *Imbler* at 430.

{¶ 124} Based on Daly's allegations, Slyman presented himself to the trial court as the prosecutor on the case and acted in accordance with his role as an advocate for the City of Riverside. Slyman engaged in prosecutorial functions including interviewing S.H., filing motions on behalf of the City of Riverside, and engaging in plea negotiations. "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). According to Daly's deposition transcript, Slyman prosecuted the case because Certo was trying to "more efficiently distribute his workload." Daly Depo. at 218. Daly did not challenge Slyman's authority to prosecute the case in the municipal court and benefitted from plea negotiations with him by entering a no contest plea in return for the dismissal of three charges. *Id.* at 244-245. Daly could have filed a motion in the criminal case to dismiss the complaint or to remove counsel, but he did not. *See State ex rel. Burkons v. Beachwood*, 2021-Ohio-950, ¶ 13 (8th Dist.). Nevertheless, Daly pointed to

no Civ.R. 56(C) evidence that raised a genuine issue of material fact as to Slyman's acts performed as a prosecutor on behalf of the City of Riverside. Accordingly, we conclude Slyman was entitled to immunity for his actions.

{¶ 125} Even if Slyman were not entitled to immunity, Slyman was entitled to summary judgment on other grounds. In addition to arguing that Slyman was entitled to statutory and common law immunity, Riverside Defendants also argued that there was no issue of material fact in dispute for the malicious prosecution claim. Specifically, they argued that there was probable cause to pursue the charges against Daly and there was no evidence of malice.

{¶ 126} In order to prevail on a malicious prosecution claim, the plaintiff must prove: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Criss v. Springfield Twp.*, 56 Ohio St.3d 82, 84 (1990), citing *Trussell v. General Motors Corp.*, 53 Ohio St.3d 142 (1990). "Malice" for purposes of a claim of malicious criminal prosecution "means an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." (Citations omitted.) *Id.* at 85. "[C]laims for malicious prosecution are not favored at law because they 'act as a restraint upon the right to resort to the courts for lawful redress.' " *Froehlich v. Ohio Dept. of Mental Health*, 2007-Ohio-4161, ¶ 9, quoting *Guy v. McCartney*, 2002-Ohio-3035, ¶ 18 (7th Dist.).

{¶ 127} "In actions for malicious prosecution, while malice is an essential element, the want of probable cause is the real gist of the action." *Melanowski v. Judy*, 102 Ohio St. 153, 155 (1921). "If the plaintiff cannot show lack of probable cause, the claim for

malicious prosecution fails as a matter of law." *Frazier v. Clinton Cty. Sheriff's Office*, 2008-Ohio-6064, ¶ 14 (12th Dist.), citing *Davis v. Peterson*, 1995 WL 134796, *3 (9th Dist. Mar. 29, 1995). Probable cause, as it pertains to a malicious prosecution claim, is defined as " 'a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.' " *Barbera*, 170 Ohio St. at 246, quoting *Ash v. Marlow*, 20 Ohio 119 (1851). " 'The determinative issue is not whether a particular crime was actually committed, but whether there was a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused was guilty of the offense with which he was charged.' " *Copas v. Emro Marketing, Inc.*, 1999 WL 114975, *3 (2d Dist. Mar. 5, 1999), quoting *Garza v. Clarion Hotel, Inc.*, 119 Ohio App.3d 478, 482 (1st Dist. 1997).

{¶ 128} "A proceeding is 'terminated in favor of the accused' only when its final disposition indicates that the accused is innocent." *Ash v. Ash*, 72 Ohio St.3d 520, 522 (1995). "However, a prosecution that is terminated by reason of a voluntary settlement or agreement of compromise with the accused is not indicative of guilt or innocence and, therefore, is not a termination in favor of the accused." *Id.* at 522.

{¶ 129} The three charges in Case No. 2019-CRB-608E were dismissed as part of a plea agreement on September 13, 2019. Because this case was terminated based on a voluntary agreement of compromise, Daly cannot establish that this case was terminated in favor of the accused to support a malicious prosecution claim. Therefore, we need not consider whether there was probable cause to pursue a prosecution for

those offenses.

{¶ 130} It is also questionable whether Case No. 2019-CRB-734E was terminated in favor of the accused in such a way to support a malicious prosecution claim. Following Daly's no contest plea, finding of guilt, and sentence, he appealed. After the remand and subsequent appeal, we ordered the trial court to enter a dismissal of the charge as a result of a jurisdictional defect in the complaint, not because the charges lacked merit. We stated that "[b]ecause the defect was jurisdictional, the State's remedy was to file a new valid complaint." As noted above, "[a] proceeding is 'terminated in favor of the accused' only when its final disposition indicates that the accused is innocent." *Ash* at 522. However, the parties did not address this issue in the trial court or on appeal. Therefore, we will assume for purposes of this appeal that Case No. 2019-CRB-734E was terminated in Daly's favor and will now consider whether there was probable cause to charge the offense in Case No. 2019-CRB-734E.

{¶ 131} In Case No. 2019-CRB-734E, Daly was charged with one count of violating a protection order, in violation of R.C. 2919.27(A)(2). The criminal complaint alleged that on November 2, 2018, at the Riverside Police Department, Daly recklessly violated the terms of a protection order issued pursuant to R.C. 2903.214 in that he had a firearm on his person while under an active protection order issued in Case No. 2018 CV 05086. Daly Depo. Ex. H. Riverside Detective Christine Krueger signed the complaint. *Id.*

{¶ 132} Officer Perfetti stated in his affidavit that on November 2, 2018, he met with Daly, who made a theft complaint about S.H. Daly had been served with an ex parte protection order, for which S.H. had been the complainant. Daly Depo. Ex. C and E.

The order provided that Daly was not permitted to "possess, use, carry, or obtain any deadly weapon at any time while the Order remain[ed] in effect" unless Daly was excepted for official use pursuant to 18 U.S.C. 925(a)(1). Daly Depo. at 71; Daly Depo. Ex. C. When Daly met with Officer Perfetti, Daly informed Officer Perfetti that he had a gun in his possession, which was in violation of the ex parte protection order. Perfetti affidavit; Daly Depo. Ex. B.

{¶ 133} In his deposition, Daly was asked the following question: "when you met with Mr. Perfetti on the 2nd, you told him you had a firearm on you, correct?" Daly Depo. at 72. Daly responded, "That is correct." *Id.* at 73. Daly then explained that he had informed Officer Perfetti that he had a gun, but he did not in fact have a gun on his person. *Id.* at 74. When asked why he told Officer Perfetti that information, Daly responded "Because I wasn't certain whether I had it in the small of my back or not or in my pocket. So it's always better to say that you do and not, then to not say that you do and have. Because if you have and you didn't say that you had, you can be arrested and lose your firearm license and go to jail. So you throw that out there as a precaution and you're covered under all circumstances." *Id.* at 74-75.

{¶ 134} Based on this record, there is no dispute that Daly told Officer Perfetti that he had a gun on his person when they met at the police station on November 2, 2018. The record also supports that the ex parte protection order, which was issued on October 31, 2018, pursuant to R.C. 2903.214, was active on November 2 and precluded Daly from possessing a deadly weapon. Even though Daly later denied possessing a gun in his deposition testimony, defendants were not required to demonstrate that Daly would have

been convicted at trial of the charged offense, only that probable cause existed at the time of the prosecution. *See Dehlendorf v. Gahanna*, 2015-Ohio-3680, ¶ 26 (10th Dist.). The evidence presented to the trial court met Slyman's initial summary judgment burden to show there was no genuine issue of material fact that he had had probable cause to pursue the criminal prosecution of Daly. The burden then shifted to Daly to point to evidence in the record showing there was no probable cause.

**{¶ 135}** Daly failed to point to specific portions of the record exhibiting a genuine issue of material fact regarding the issue of probable cause. As a result, the trial court correctly granted summary judgment to Slyman on Daly's claim of malicious prosecution.

**{¶ 136}** Daly's fourth assignment of error is overruled.

### VII. Conclusion

**{¶ 137}** Having overruled all of Daly's assignments of error, we will affirm the judgment of the trial court.

. . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.